Cloyce K. BOX and Thomas
D. Box, Plaintiffs,

v.

AMERITRUST TEXAS, N.A.; Bank One Texas, N.A.; The Bank of New York; Lloyds Bank, PLC; National Bank of Canada; Banque Worms; and Bank of America National Trust and Savings Association, Defendants.

No. 2:92cv0089.

United States District Court,
E.D. Texas,
Marshall Division.

Dec. 29, 1992.

Carl R. Roth of Jones, Jones, Curry & Roth, Marshall, TX, William Maston Boyd of Boyd, Veigel & Hance, McKinney, TX, for plaintiffs.

George H. Tarpley, Samuel M. Stricklin, and Robert J. Taylor of Sheinfeld, Maley & Kay, P.C., Dallas, TX, for defendants.

## ORDER

HALL, District Judge.

CAME ON TO BE HEARD THIS DAY the Motion to Transfer Venue of Defendants Ameritrust Texas, N.A., Bank One Texas, N.A., The Bank of New York, Lloyds Bank, PLC, National Bank of Canada, Banque Worms, and Bank of America National Trust and Savings Association, (the "Bank Group"). This Court, after reviewing the Motion, finds that it is not well taken.

## I. BACKGROUND

This case arises out of a loan agreement between Box–Crow Cement Company, L.P. ("Box–Crow") and the Bank Group whereby the Bank Group committed to loan approximately $100 million for the construction of a cement plant in Midlothian, Texas. As part of the loan transaction, the Bank sought and was granted by Plaintiff Cloyce K. Box a lien upon 329 acres of real property in Collin County, Texas as collateral to secure repayment of Box–Crow's debt. Cloyce Box also entered into a Collateral Purchase Agreement whereby he agreed to purchase, on demand by the Bank Group, the Bank Group's lien upon the Collin County realty for $25 million, such amount to be applied to Box–Crow's debt to the Bank Group.

Plaintiffs assert that the Bank Group's actions in requiring Cloyce Box to enter into the Collateral Purchase Agreement to guarantee Box–Crow's loan violate the Bank Tying Act, 12 U.S.C. § 1971 et seq. Plaintiffs seek injunctive relief to prevent the Bank Group from enforcing the agreements, and money damages for injuries Cloyce Box has sustained to his business and property as a result of the actions of the Bank Group. Defendants now ask the Court to transfer this case to the Dallas Division of the United States District Court for the Northern District of Texas.

## II. DISCUSSION

Plaintiffs assert that venue is mandatory in the Eastern District of Texas under the common law "local action" doctrine. Defendants assert that a transfer is appropriate because the parties executed a forum selection clause providing for venue in Dallas, and because a transfer of this action is appropriate under 28 U.S.C. § 1404(a). The Court will address each of these issues in turn.

### A. "Local Action" Doctrine

■■■ Plaintiffs assert that venue is mandatory in this district under the "local action" doctrine because the suit instituted by Plaintiffs against the Bank Group seeks the removal of a deed of trust lien as an encumbrance on real estate located within the Eastern District of Texas. Under the local action doctrine, an action involving real property, as opposed to a transitory action, must be brought within the territorial boundaries of the state in which the land is located. *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir.1987); *see also* 15 Wright, Miller & Cooper, *Federal Practice & Procedure; Jurisdiction and Related Matters 2d* § 3822 at 202–204.

The distinction between local actions and transitory actions finds its American roots in *Livingston v. Jefferson*, Fed.Cas. No. 8,411 (C.C.D.Va.1811). This case arose during the presidency of Thomas Jefferson when United States marshals, acting on President Jefferson's instructions, forcibly ejected Edward Livingston, a Louisiana landowner, from land along the Mississippi River in New Orleans. Livingston sued the by-then former president in a federal court in Virginia for an alleged trespass to his land. *See* 4 Beveridge, *Life of John Marshall*, pp. 100–116 (1919).

A distinguished panel composed of District Judge John Tyler, father of the future President of the same name, and Chief Justice John Marshall, namesake of this Division of the Eastern District, dismissed the action. Chief Justice Marshall wrote that "actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere ... but are local where their cause is in its nature necessarily local." *Id.* at 664. Accordingly, the Chief Justice, sitting as a circuit judge, found that an action for trespass to land in Louisiana was local, and could not be heard in a Virginia court.

Since *Livingston*, the common law local action doctrine has become ingrained in American jurisprudence, with state and federal courts alike recognizing and applying the rule. *See, e.g., Louisville & N.R. Co. v. Western Union Telegraph Co.*, 234 U.S. 369, 34 S.Ct. 810, 58 L.Ed. 1356 (1914); *Miller v. Miller*, 715 S.W.2d 786, 788 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

■■■ The United States Court of Appeals for the Fifth Circuit maintains what it recently termed a "questionable distinction" between the local action doctrine and other matters of federal jurisdiction and venue by holding that the law of the state in which the property is located must govern in the determination of what constitutes "local action." *See, e.g., Trust Company Bank v. United States Gypsum Company*, 950 F.2d 1144 (5th Cir.1992). This is in contrast to the usual rule, which is that federal law, not state law, controls the outcome of subject matter jurisdiction and venue disputes. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters 2d* § 3822 at 207. Commentators and the Fifth Circuit itself attribute the difference to its adherence to *Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank*, 416 F.2d 301 (5th Cir.1969), in

which the Fifth Circuit relied on the Supreme Court's opinion in *Huntington v. Attrill*, 146 U.S. 657, 669–670, 13 S.Ct. 224, 228–29, 36 L.Ed. 1123 (1892), which apparently misread Chief Justice Marshall to have stated that state law should control the determination of what actions are local, when in fact he stated just the opposite. *Id.* at 208 and n. 25; *Trust Company Bank, supra,* 950 F.2d at 1149–1150. Fortunately the difference is not of great practical importance for in most instances state law has developed in accordance with the federal decisions. *Id.* at 208–209; 950 F.2d at 1149.

The relevant local action statute, therefore, is Tex.Civ.Prac. & Rem.Code, § 15.011, which provides:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

██ Texas courts have held that this section must be strictly construed, and that it only applies where suit is clearly within one of the categories set out therein. *Scarth v. First Bank & Trust Co.*, 711 S.W.2d 140 (Tex.App.—Amarillo 1986, no writ). Further, courts have held that this section does not govern "where title to land was involved only incidentally or secondarily, but only where the title to the land is the 'dominant purpose' of the lawsuit." *Id.; Stiba v. Bowers*, 756 S.W.2d 835, 839 (Tex.App.—Corpus Christi 1988, no writ). The dominant purposes of the lawsuit is a question of law for the court. *Evans v. Speed*, 339 S.W.2d 257 (Tex.Civ.App.—Fort Worth 1960, writ dism'd w.o.j.). The Court must ascertain the dominant purpose solely from the face of the plaintiff's complaint, including the facts alleged, the rights asserted, and the relief requested therein. *Stiba*, 756 S.W.2d at 839.

In *National Advertising Co. v. American Bank of Waco*, 622 S.W.2d 483 (Tex.App.—Waco 1981, writ dism'd w.o.j.), the bank sued the defendant in McLennan County to recover on a promissory note

payable in that county, and to foreclose liens on real property that secured the note. Defendant filed a plea of privilege to be sued in Harris County, where the real property was located. The appellate court affirmed the trial court's denial of the plea, holding that the dominant purpose of the bank's suit, to secure judgment on the note and foreclose on the security, was not sufficiently related to the real property to compel application of the statute. *Id.* at 485. *See generally,* Dickerson & Jordan, *Mandatory Venue Under Section 15.011 of the Texas Civil Practice and Remedies Code: Boundaries and Procedures,* 54 Tex.B.J. 162 (1991).

In this case, Plaintiffs claim that § 15.011 is applicable because the dominant purpose of the lawsuit is to remove the encumbrance on the Collin County real estate. After carefully examining the Plaintiffs' complaint, the Court is not persuaded that removal of the encumbrance is the "dominant purpose" of the lawsuit. The dominant purpose of this lawsuit is to recover under the provisions of the Bank Tying Act, and to prevent the enforcement of the Collateral Purchase Agreement, neither of which are sufficiently related to the property in Collin County to compel application of the statute. Nor does this suit fall within the equitable rights or bad faith and fraud exceptions to § 15.011. 54 Tex.B.J. at 162. The Court therefore holds that venue in the Eastern District may not properly be predicated on the "local action" doctrine codified in Tex.Civ.Prac. & Rem.Code § 15.011.

## B. Forum Selection Clause

██ Defendants assert that a transfer of this action is appropriate because the parties executed as part of the First Amendment to the Collateral Purchase Agreement a forum selection clause which provides that venue for any dispute shall be in the county or judicial district of the Agent's principal place of business. The Agent at the time the First Amendment was executed was the Deposit Insurance Bridge Bank, N.A. (successor to MBank Dallas, N.A.), which maintained its principal place of business in Dallas, Texas, and the Agent at the

time this suit was filed was Ameritrust Texas, N.A., which maintains its principal place of business in Dallas, Texas as well. For this reason, Defendants argue that this case should be transferred to the Dallas Division of the United States District Court for the Northern District of Texas.

Traditionally, forum selection clauses have been viewed with disfavor in the federal courts. *Insurance Co. v. Morse*, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874); *Carbon Black Export v. The S.S. Monrosa*, 254 F.2d 297, 300–301 (5th Cir. 1958), *cert. denied*, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959). There has, however, been an increasing acceptance of forum selection clauses over the last twenty years. In a 1972 admiralty case involving an international towage contract, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the United States Supreme Court reversed the old presumption against forum selection clauses, stating that:

> [I]n the light of present day commercial realities and expanding international trade we conclude that the forum selection clause should control absent a strong showing that it should be set aside.

*Id.* at 15, 92 S.Ct. at 1916. This newer presumption has itself been altered in 28 U.S.C. § 1404(a) motions as a result of the Supreme Court's opinion in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Stewart*, the Court held that a district court considering a § 1404(a) motion to transfer venue should not treat a forum selection clause as dispositive, but as part of the "flexible and individualized" analysis that Congress prescribed in 28 U.S.C. § 1404(a). *Id.* at 29–30, 108 S.Ct. at 2243–44. Since Congress had directed that multiple considerations govern transfer within the federal court system, the Court reasoned that the forum-selection clause which represented the parties' agreement as to the most proper forum "should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31, 108 S.Ct. at 2245.

Accordingly, the Court moves to the § 1404(a) analysis.

C. Motion to Transfer—28 U.S.C. § 1404(a)

■ 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244; *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964).

■ In determining whether to grant a transfer of venue under § 1404(a), the Court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3847 at 370 (1986); *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989), *cert. denied*, 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). In seeking a transfer of venue under § 1404(a), the burden of proof is on the movant. *Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir.1966); *See, generally*, Steinberg *The Motion to Transfer and the Interest of Justice*, 66 Notre Dame L.Rev. 443 (1990).

In making the required § 1404(a) balancing, the Court considers certain factors to merit special consideration. In this case, they include the plaintiff's choice of forum, the difference in docket congestion, and the presence of a forum selection clause.

1. Plaintiff's Choice of Forum

■ The plaintiff's choice of forum has been called the "starting point for every motion to transfer." *Paragon–Revolute Corp. v. C.F. Pease Co.*, 120 F.Supp. 488, 490 (D.C.Del.1954). It is well recognized that the plaintiff's choice of forum is the

primary factor to be considered in determining motions under § 1404(a). *See, e.g., Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (specific hardship greater than mere inconvenience must be present to disturb plaintiff's choice of forum); *Menendez Rodriguez v. Pan American Life Insurance Co.,* 311 F.2d 429, 434 (5th Cir.1962), *vacated on other grounds,* 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964). *Time, supra,* 366 F.2d at 698 (plaintiff's privilege to choose, or not to be ousted from his chosen forum is "highly esteemed"). *See also, Ford Motor Co. v. Ryan,* 182 F.2d 329, 332 (2nd Cir.1950) (Learned Hand, J., concurring); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3848.

### 2. Relative Docket Congestion

Another important factor is the relative docket congestion of different districts. *Parsons v. Chesapeake & Ohio Railroad,* 375 U.S. 71, 73, 84 S.Ct. 185, 186, 11 L.Ed.2d 137 (1963) (a trial judge weighing the interests of justice could legitimately consider the condition of his court's docket an important factor); *Koehring, Co. v. Hyde Construction Co.,* 324 F.2d 295, 296 (5th Cir.1963); *see generally,* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3854. Plaintiffs in other courts have relied on differences in docket congestion to defeat motions to transfer. In *AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335 (S.D.Ohio 1982), the plaintiff brought suit in the Southern District of Ohio. In declining to transfer the case to the Central District of California, the *AMF* court noted: "[T]he median time between filing and disposition by trial, of civil cases, was twenty-five months in the Southern District of Ohio, while in the Central District of California, the median time was thirty-one months." *Id.* at 1346; *see also National Super Spuds v. New York Mercantile Exchange,* 425 F.Supp. 665, 668 (S.D.N.Y.1977).

In this case, while current statistics on the median time between filing and disposition by trial of civil cases in the Marshall Division of the Eastern District of Texas and the Dallas Division of the Northern District of Texas are not available, the Court notes that the Eastern District of Texas has implemented a Civil Justice Expense and Delay Reduction Plan pursuant to the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 et seq. The Court is of the belief that this case can be tried in the Eastern District, under the Plan, with less expense, delay, and inconvenience for both parties than it could be in the Northern District of Texas, where no comparable Plan exists.

### 3. Forum Selection Clause

The Defendants argue that the presence of a forum selection clause such as the parties entered into in this case overcomes the presumption in favor of the Plaintiffs' choice of forum. The Supreme Court in *Stewart* held that such a clause "will be a significant factor that figures centrally in the district court's calculus," but also noted that "it is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum selection clause ..." *Id.* 487 U.S. at 29, 31, 108 S.Ct. at 2244, 2244.

It is important to note that the language in *Stewart* cited by the Eleventh Circuit in its subsequent opinion enforcing the forum selection clause, and by the Defendants in their reply brief, came not from the majority opinion, but from Justice Kennedy's concurrence, which urged that "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 33, 108 S.Ct. at 2246; *In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989); *see, e.g., Stewart v. Dean–Michaels Corp.,* 716 F.Supp. 1400, 1405 (N.D.Ala.1989) (citations omitted). The Court refrains from giving the forum selection clause this weight, as the Eleventh Circuit has done in *In re Ricoh. See also, Brock v. Entre Computer Centers, Inc.,* 740 F.Supp. 428, 431 (E.D.Tex.1990) (following *In re Ricoh* ). Rather, the Court adheres to the balancing

contained in Justice Marshall's majority opinion. *See, e.g., Fibra–Steel, Inc. v. Astoria Industries, Inc.,* 708 F.Supp. 255, 257 (E.D.Mo.1989); *see also,* Lehman, *Viva Zapata! Toward a Rational System of Forum Selection Clause Enforcement in Diversity Cases,* 66 N.Y.U.L.Rev. 422, 456, n. 223 (1991).

Additionally, the Supreme Court has held that the reasons to enforce a forum-section clause are compelling only if the clause is the result of a "freely negotiated private ... agreement, unaffected by fraud, undue influence, or overweening bargaining power." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). The Court has also directed district courts to consider the fairness of a transfer "in light of the forum selection clause *and the parties' relative bargaining power." Stewart,* 487 U.S. at 29, 108 S.Ct. at 2244 (emphasis added).

The Court therefore finds that the Plaintiff's allegation that the execution of the Collateral Purchase Agreement containing the forum selection clause was induced in violation of the Bank Tying Act reduces the weight to be given to the forum selection clause under the § 1404(a) analysis. *See, e.g., Hoffman v. Minuteman Press International,* 747 F.Supp. 552, 559 (W.D.Mo. 1990); *Nelson v. Master Lease Corp.,* 759 F.Supp. 1397, 1402 (D.C.Minn.1991).

After balancing the required public and private factors under § 1404(a), including the Plaintiffs' choice of forum, the relative degree of docket congestion between the Marshall Division of the Eastern District of Texas, and the Dallas Division of the Northern District of Texas, and the presence of a forum selection clause, the Court is not persuaded that a transfer would be more convenient for the parties and witnesses and in the interest of justice as required by § 1404(a).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Transfer Venue is hereby in all things DENIED.