**Van Larry REED and Wilma E. Reed, Plaintiffs,**

v.

**FINA OIL & CHEMICAL COMPANY, Sun Company, Inc. (R & M ), Union Oil Company of California, Texas Olefins, and Phillips Petroleum Company, Defendants.**

No. 1:97–CV–641.

United States District Court, E.D. Texas, Beaumont Division.

Feb. 24, 1998.

Jeff Robert Branick, John Keith Hyde, Michael A. Havard, Provost & Umphrey, Beaumont, TX, for Van Larry Reed and Wilma E. Reed.

Gail Cucancic Jenkins, Jenkins Grove & Martin, Beaumont, TX, for Fina Oil & Chemical Co.

Michael L. Baker, Strong Pipkin Nelson & Bissell, Beaumont, TX, for Sun Co., Inc, (R & M) and Union Oil Co. of California.

Joe C. Holzer, Butler & Binion, Houston, TX, for Texas Olefins.

Stephen C. Dillard, James R. Wetwiska, Fulbright & Jaworski, Houston, TX, for Phillips Petroleum Co.

*ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE*

SCHELL, Chief Judge.

Before the court are the following motions and filings:

a) Defendant Phillips Petroleum Company's Motion to Transfer Venue, filed on December 1, 1997. Plaintiffs filed a Re-

sponse on December 17, 1997. Defendant Phillips Petroleum Company filed a Reply to Plaintiffs' Response on January 5, 1998.

b) Plaintiffs' Motion to Remand, filed on December 9, 1997. Defendant Phillips Petroleum Company filed a Motion for Enlargement of Time to Respond to Plaintiffs' Motion to Remand on December 10, 1997, which was granted on December 19, 1997. Phillips filed a Response to Plaintiffs' Motion to Remand on January 23, 1998.

Upon consideration of the motions, responses, reply, and applicable law, the court is of the opinion that the Motion to Remand should be DENIED and Defendant's Motion to Transfer should be GRANTED.

I. BACKGROUND OF THIS LITIGATION

The plaintiffs originally filed this lawsuit in 1995[1] in state district court in Jefferson County, Texas. Plaintiffs claim that the decedent, Van Larry Reed ("Reed"), developed leukemia while he was employed by Defendant Phillips Petroleum Company ("Phillips") at its Borger, Texas, synthetic rubber facility.[2] Reed allegedly developed the leukemia as a result of exposure to chemicals manufactured or distributed by certain defendants. Phillips was not added as a defendant until October 17, 1997, after he died and his widow, Wilma Reed, amended the petition to include Phillips, her late husband's employer. Subsequently, on November 14, 1997, Phillips removed the case to federal court, alleging federal enclave jurisdiction and federal officer jurisdiction.[3]

Phillips asks the court to transfer this case under 28 U.S.C. § 1404(a) to the Northern District of Texas, Amarillo Division. Phillips contends that venue is proper in that court because a substantial part of the events or

---

1. Plaintiffs claim that the suit was originally filed in 1992. Pls.' Resp. to Def.'s Mot. to Transfer at 1. The court's files, however, contain a certified copy of the state court docket sheet. The docket sheet reflects that the Original Petition filed in the underlying state court suit was filed on August 10, 1995. Regardless of when the suit was initiated, however, that issue does not affect the court's disposition of the pending motions.

2. Attached to its Opposition to Plaintiffs' Motion to Remand, Phillips filed voluminous documents in support of removal under federal officer jurisdiction and federal enclave jurisdiction. In the

various documents, the Borger facility (which apparently contained both a Butadiene plant and a Copolymer plant) is referred to by several different names, whether it be the "Plains Butadiene Plant," the "Plains Synthetic Rubber Complex," or even "Plancor No. 484" in certain government documents. For the purposes of this decision, the court will refer to the plant as either the "Borger facility" or the "Plains Butadiene Plant." *See* Def.'s Opp. at 5 n. 2.

3. According to the court's docket, all other defendants consented to the removal by filing notices with the court on November 14, 1997.

omissions giving rise to Plaintiffs' claims occurred at the Plains Butadiene Plant, which is within the Northern District, Amarillo Division. *See* 28 U.S.C. § 1391; Def.'s Mot. at 3–4. Phillips also argues that a transfer of venue is proper under § 1404(a).

Plaintiffs dispute Phillips' interpretation of the § 1404(a) factors, and claim that transfer is inappropriate in this case. Meanwhile, Plaintiffs have also filed a Motion to Remand, asking the court to remand the case back to state court. Pls.' Mot. to Remand at 11–12. Plaintiffs argue that this court does not have subject matter jurisdiction over the case since, according to Plaintiffs, the grounds for removal are without merit.

## II. SUBJECT MATTER JURISDICTION AND A MOTION TO TRANSFER

■ It is often stated that a federal court cannot transfer a case if subject matter jurisdiction does not exist. *See Coons v. American Horse Show Association, Inc.,* 533 F.Supp. 398, 400 (S.D.Tex.1982) (citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRACTICE & PROCEDURE § 3844 at 211). Some authority holds to the contrary, however, and would allow the court to transfer the case without first deciding the threshold question of subject matter jurisdiction. *See Nose v. Rementer,* 610 F.Supp. 191, 192 n. 1 (D.Del.1985) (holding that 28 U.S.C. § 1631 has the specific legislative intent to allow a court to transfer a case where it lacks subject matter jurisdiction to a court that has such jurisdiction).

Nevertheless, by filing a Motion to Remand the plaintiff has brought the question of subject matter jurisdiction to the attention of the court and the parties. The court believes that the threshold issue of federal question jurisdiction, based on the doctrines of federal officer jurisdiction and federal enclave jurisdiction, can be decided in this court. The parties have already submitted their arguments and briefs in support thereof, and Phillips has submitted lengthy and voluminous materials supporting subject matter jurisdiction.

The court finds that, in the interests of judicial economy, the Motion to Remand and the issue of subject matter jurisdiction should be addressed before the § 1404(a) Motion to Transfer. Deciding subject matter jurisdiction at this time will limit any delays in pursuing this litigation. If subject matter jurisdiction is in fact present in this court, the court can then decide the Motion to Transfer. Once the Motion to Transfer is decided, either this court (if the Motion to Transfer is denied) or the transferee court (if the Motion to Transfer is granted) will be able to quickly move forward with the litigation.

## III. PLAINTIFF'S MOTION TO REMAND

### A. Background of the Synthetic Rubber Industry

Certain historical facts submitted to the court by Phillips are germane to the Motion to Remand. Specifically, Phillips has claimed that federal officer removal and federal enclave removal are appropriate. To that end, Phillips has submitted materials explaining the nature of the synthetic rubber industry that was begun during World War II and continued in the years thereafter. Since this history is directly relevant to the Plains Butadiene Plant that is the subject of this litigation, a brief review of the history is appropriate.

In the years just prior to and during World War II, the synthetic rubber industry was overseen by the federal government because 90% of the nation's supply of natural rubber was threatened by the war. Def.'s Opp., Ex. D (Harry A. McDonald, Administrator of Reconstruction Finance Corporation, Report, "Program for Disposal to Private Industry of Government–Owned Rubber Producing Facilities" at 1–3 (1953)). With the backing and strict control of the federal government, a synthetic rubber manufacturing process was developed in the United States. *Id.* Previous attempts at developing commercially viable synthetic rubber had fallen short, but a concerted effort by the national government and private industry succeeded where private industry alone had failed. *Id.* Synthetic rubber filled the gap in the natural rubber supply, thus allowing the continued production and distribution of tires and other necessary materials for war production. Def.'s Opp., Ex. A (John W. Frey and H. Chandler Ide, eds., A HISTORY OF THE PETROLEUM ADMINISTRATION FOR WAR 1941–1945, at 191 (1946)). Portions of the synthetic rubber industry were controlled by

various agencies of the federal government, including the War Production Board, the Reconstruction Finance Corporation, the Rubber Reserve Company, and the Defense Plant Corporation, among others. *Id.*, Ex. A at 223, Ex. D at 1–2.

In order to manufacture a sufficient amount of synthetic rubber for the war effort, the Defense Plant Corporation acquired land for and contracted for the construction of 51 manufacturing plants that would provide both the necessary materials for the production of synthetic rubber and the finished product. *Id.*, Ex. D at 2; *see also id.*, Ex. E at 1 (May 11, 1942, Agreement of Lease between Defense Plant Corporation and Phillips Petroleum Company). Throughout World War II, the Defense Plant Corporation maintained ownership and control of all 51 facilities. The private companies that operated the plants were subject to the control of the federal government in various ways, as the companies were lessees of the plants and the production processes. Def.'s Opp., Ex. E. Further, the lessees' manufacturing processes were subject to the control of the Rubber Reserve Company and its successor, the Office of Rubber Reserve.[4] The Rubber Reserve's specifications determined both the quantity and quality of output from the different facilities. *Id.*, Ex. E at 2 (specifying output and requiring government approval throughout several phases of production).

One of the plants that was owned by the federal government and leased to a private company was the synthetic rubber complex in Borger, Texas, that is the subject of this litigation. The complex consisted of both a butadiene and copolymer plant. *Id.*, Ex. E at App. B–IV. It began operations in 1943. *Id.* at 2.

After the termination of World War II and the Korean conflict, when the "war effort" had run its course, there was no longer a need for a government-controlled synthetic rubber process. Thus, Congress passed the Rubber Producing Facilities Disposal Act of 1953, which authorized the sale of the 51 synthetic rubber facilities to private industry.

*Id.*, Ex. F at 2 (citing P.L. 205, 83rd Cong., 67 Stat. 408 (1953) as authority for the sale of the Plains Butadiene Plant). Pursuant to this Act, Phillips purchased both the butadiene and copolymer plants located in Borger, Texas, in 1955. *Id.*, Ex. F. Defendants have provided the court with both the general warranty deed conveying the Plains Butadiene Plant to Phillips and the bill of sale, dated April 27, 1955. *Id.*, Exs. F–G.

### B. Alleged Grounds for Removal

Phillips removed this case on November 14, 1997. Def.'s Notice of Removal at 1. In Defendant's Notice of Removal and in Defendant's Opposition to Plaintiff's Motion to Remand, Phillips claims that removal is appropriate on two grounds: federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), and federal enclave jurisdiction under U.S. CONST. ART. I, § 8, cl. 17. Def.'s Notice of Removal at 2–3; Def.'s Opp. at 1.

The exposure of which Plaintiffs complain allegedly took place between 1944 and 1979. Def.'s Opp., Ex. I at 7, 12–13 (Depo. of Wilma Reed). Since Plaintiffs have not claimed that the injury specifically occurred after 1955, and since Plaintiffs have alleged one continuous injury from 1944 through 1979, there are at least ten years of exposure for which the federal officer and federal enclave elements are at issue in this case. Phillips claims that it acted under the control of the federal government in operating the Plains Butadiene Plant from 1944–55, and that period of time qualifies it for federal officer jurisdiction. Phillips also maintains that the Borger, Texas facility was a federal enclave from 1944–55 and is qualified for removal under that theory. As Phillips urges in its Opposition to Plaintiffs' Motion to Remand, "[v]ery simply, the plaintiffs have alleged a single, indivisible injury that arises in part under federal law and in part under state law. Even if the state and federal claims were divisible, which they are not, this Court would have jurisdiction over both claims." *Id.* at 5, n. 3 (citing 28 U.S.C. §§ 1367(a), 1441(c)). Therefore, if Phillips

---

4. On June 30, 1945, the Rubber Reserve Company was dissolved and its powers and obligations were transferred to the Office of Rubber Reserve. *Id.*, Ex. C at 452 (THE GOVERNMENTS RUBBER PRO-JECTS, VOL. II: A HISTORY OF THE U.S. GOVERNMENT'S NATURAL AND SYNTHETIC RUBBER PROGRAMS, 1941–1955 (1955)).

can establish federal officer jurisdiction or federal enclave jurisdiction, or both, for Plaintiffs' claims arising from the exposure of 1944–55, then jurisdiction extends to the claims arising from post–1955 exposure.

## C. Federal Officer Jurisdiction

Title 28, United States Code § 1442(a)(1) allows the ·removal of an action to federal court if the action is brought against an agency or officer of the United States, or any person acting under that officer, sued in an official or individual capacity for actions taken under color of that office. 28 U.S.C. § 1442(a)(1). In order to justify removal under 28 U.S.C. § 1442(a)(1), the defendants must show:

(a) that they were acting at the direction of an officer of the United States;

(b) that they are "persons" as envisioned by the statute;

(c) a causal nexus between plaintiffs' claims and acts that the defendants performed under color of federal office; and

(d) that they have a colorable federal defense to the plaintiffs' claims.

*Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 134–36, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Akin v. Big Three Industries*, 851 F.Supp. 819, 822–23 (E.D.Tex.1994); *Pack v. AC and S, Inc.*, 838 F.Supp. 1099, 1101 (D.Md.1993). The party invoking removal bears the burden of establishing federal jurisdiction over the state court suit. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995); *see also Good v. Armstrong World Industries, Inc.*, 914 F.Supp. 1125, 1127 (E.D.Pa.1996); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992).[5]

Plaintiffs claim that Phillips has provided no evidence or insufficient evidence to support removal under these four elements. The court disagrees. Phillips has provided voluminous evidence that the Borger facility

was constructed at the behest of the United States government, that the production and transportation of butadiene from the years 1944–1955 was conducted under the auspices of the United States government, and that removal under § 1442(a)(1) is appropriate.

### 1. Acting at the direction of an officer of the United States

For a court to find that this element is satisfied, the party seeking removal must show that the federal government had "direct and detailed control" over the operation in question. *Winters v. Diamond Shamrock Chem. Co.*, 901 F.Supp. 1195, 1199 (E.D.Tex. 1995) (citations omitted). To satisfy this requirement, Phillips must show that "the plaintiff[s'] state court action is derived from activities performed pursuant to federal direction." *Id.*

Phillips has provided the court with ample evidence to show that it was operating under the direction and control of the federal government in the construction and operation of the butadiene plant, and in the transportation of the materials to and from the plant. Specifically, Phillips has shown that the facility was constructed at the order of the Rubber Reserve Company, a company chartered by the federal government during World War II in order to supplement the nation's synthetic rubber processes for wartime use. Further, Phillips has provided evidence that almost every aspect of the actual operation of the plant was supervised or dictated by the federal government. As stated in 1945 by the Executive Vice President of the Rubber Reserve Corporation, "[o]ne of the most important activities of Rubber Reserve Company at the present time is the supervision of the operation of fifty-one government-owned plants in the synthetic rubber program." Def.'s Opp., Ex. B (Preface, REPORT ON THE RUBBER PROGRAM, 1940–45 (1945)).

---

5. Normally, the federal removal statute should be strictly construed since it deprives a state court of a case properly before it, thereby implicating important federalism concerns. *Carpenter*, 44 F.3d at 365. However, when jurisdiction is predicated on § 1442, a more liberal interpretation of the removal statute is to be entertained in order to effectuate the purposes of § 1442, which is to require the protection of a federal forum for

federal officers. *Willingham v. Morgan*, 395 U.S. 402, 406–07, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see* Def.'s Opp. at 6, n. 4. In the instant case, however, even under the strict removal standard of *Carpenter* and its progeny, the defendants have more than met their burden of proof to establish federal officer jurisdiction under § 1442(a)(1).

Phillips has pointed out several specific examples that show the federal government's control over the Plains Butadiene Plant. The court finds the following to be the most persuasive, although not the only, evidence supporting the "federal control" element of § 1442(a)(1):

a) The Rubber Reserve Company required detailed accountings and pre-approved expenditures made in connection with plant construction and operation. *Id.*, Ex. J (Letter from C.W. Hubbell, Manager, Phillips Petroleum Company, to W.K. Quigley, Defense Plant Corporation).

b) Government-owned synthetic plants, such as the Plains Butadiene Plant, were required to get prior approval from officers of the Rubber Reserve Company for expenditures in excess of $1,000.00. *Id.*, Ex. M (December 23, 1944, Notice from Vice–President of the Rubber Reserve to the B.F. Goodrich Company, referring to the "integrated aspects of the synthetic rubber program").

c) Phillips was required to get approval from government officers to manufacture any products not specified by the government, from the date of the plant's construction until at least 1951. *Id.*, Ex. N at ¶ 1 (March 16, 1951, Modification Agreement between Rubber Reserve and Phillips).

d) Phillips was required to obtain government approval of any salaries paid to its employees at the Plains Butadiene Plant. *Id.* at ¶ 9.

e) The Plains Butadiene Plant, as well as other synthetic rubber plants, were linked directly to the Rubber Reserve Company in Washington, D.C., by a direct teletype system, from which government officials would issue directives and instructions concerning production. *Id.*, Ex. C at 514.

f) A Purchase Agreement, for a quantity of butadiene to be sold to the government from the Plains Butadiene Plant, contained detailed specifications that required the butadiene produced to be of a very specific grade and quality. *Id.*, Ex. P at §§ 1 (May 11, 1942, Butadiene Purchase Agreement).

g) The Rubber Reserve Company required certain testing procedures that Phillips had to follow at the Plains Butadiene Plant. *Id.*, Ex. Q (Laboratory Manual of the Rubber Reserve Company, at § 1.1.1).

In their Motion to Remand, Plaintiffs argue that Phillips has provided no evidence of federal control sufficient to justify removal under the federal officer statute. Pls.' Mot. to Remand at 5 ("Removing Defendants offer no evidence or proof that the United States or the Director of the Rubber Reserve actually dictated the methods or specifications of the manufacturing process."). The court disagrees. As the above discussion demonstrates, Phillips has not only provided general evidence of the nature of the synthetic rubber plants and their origins, but it has also provided evidence of the specific control exercised by the federal government over the Plains Butadiene Plant. This type of direct, specific evidence involving the facility in question is sufficient to carry Phillips' burden under this prong of the § 1442(a)(1) test.

### 2. *"Persons" as envisioned by the removal statute*

■ Plaintiff argues that Phillips, a corporation, is not a "person" under § 1442(a)(1). Pl.'s Mot. at 6–7 (citing *Roche v. American Red Cross*, 680 F.Supp. 449, 451 (D.Mass. 1988) and *Krangel v. Crown*, 791 F.Supp. 1436 (S.D.Cal.1992)). According to case law in this circuit, however, corporations are "persons" for purposes of § 1442(a)(1). *Winters v. Diamond Shamrock Chemical Co.*, 901 F.Supp. 1195, 1198 (E.D.Tex.1995); *Akin v. Big Three Industries, Inc.*, 851 F.Supp. 819, 822–23 (E.D.Tex.1994) (citing *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975)). Therefore, the court finds that Phillips is a "person" that can act under a federal officer's authority for the purposes of § 1442(a)(1).

### 3. *Causal nexus between plaintiffs' claims and defendant's acts under color of federal office*

■ Plaintiffs argue that there is no nexus between the alleged federal officers' acts and the acts of Phillips and the other defendants. Pls.' Mot. to Remand at 7. According to Plaintiffs, their claims arise only from Reed's exposure to the agents that allegedly caused his leukemia, not from any actions that the

federal officers required of Phillips or the other defendants. *Id.*

Phillips argues, however, that the nature of Plaintiffs' exposure and liability claims arise from the production and transportation processes at the butadiene plant. Def.'s Opp. at 10–14. According to Phillips, the way in which they ran their business was begun under the direction of the federal government. The processes were conducted and directed under the control of the Rubber Reserve Company, during wartime. Because the federal government dictated the way that Phillips was required to do business from at least 1944–55, Reed's exposure was a direct result of the actions taken under the direction of a federal officer during that time.

The court finds that there is enough evidence to support the required nexus between the actions taken by the federal officers and the actions of Phillips with regard to the Borger plant. Plaintiffs' complaint alleges acts taken in the production, manufacture, transport, and testing of butadiene. *See* Pls.' First Am.Orig.Pet. at 3, ¶ VI; 5, ¶ VIII. Thus, Plaintiffs have argued in their own complaint that the way in which Phillips conducted its business from 1944–1979 is what caused Reed's illness and hastened his death. For at least ten years during the relevant time period, that production, manufacture and transport was overseen by the federal government to a very specific degree. Therefore, the nexus is present for exposure occurring between 1944 and 1955. Since Plaintiff has not stated that the exposure in question occurred only after 1955, the ten years during which the federal government was in charge of the Phillips Butadiene Plant is material to the case, and the nexus present during those ten years is sufficient to support § 1442(a)(1) removal.

### 4. A colorable federal defense to the plaintiffs' claims

■ Finally, to effect removal under § 1442(a)(1), the defendant must assert a colorable federal defense. *Akin v. Big Three Industries, Inc.*, 851 F.Supp. 819, 823 (citing *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). For the initial jurisdictional question, it is not necessary that the defendant prove that the defense is valid. "Any determination as to the merits

[of the defense] is collateral to the jurisdictional question here presented." *Id.*

Phillips claims the government contractor defense, as set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), as a defense to liability. Def.'s Opp. at 14. Phillips claims that benzene, butadiene, and synthetic rubber used and produced by the Plains Butadiene Plant were products used and made under government specifications, that the products conformed to the specifications, and that the government was informed of the dangers of the materials and products involved. *Id.* at 15.

The evidence here is more than sufficient to show that the federal government specified the exact quality and quantity of products to be used, produced and delivered by the Plains Butadiene Plant. *See supra* at Section II(B)(1) (discussing the specifications, production control, and testing control of the Rubber Reserve Company over the Plains Butadiene Plant.) Presumably, the specifications were followed. Further, since the government dictated the quality and content of the products and the testing of the products, then for the limited purpose of determining whether a *colorable* federal defense has been claimed, the court can presume that the government was informed of the attendant dangers of these products. *See Bynum v. FMC Corp.*, 770 F.2d 556, 569 (5th Cir.1985) (manufacture of an M–548 cargo carrier used in military exercises); *Winters v. Diamond Shamrock Chem. Co.*, 901 F.Supp. 1195, 1200 (E.D.Tex.1995) (manufacture of Agent Orange according to government control and specifications gave reasonable probability that the defense would apply); *Akin v. Big Three Industries*, 851 F.Supp. 819, 823 (E.D.Tex.1994) (exposure to chemicals used in military aircraft). This prong is therefore satisfied.

As a result of the foregoing analysis, Phillips acted under a federal officer at least from 1944–55, and has satisfied each of the requirements necessary to assert federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1) for that period of time. Since Plaintiffs' claims are not severable between time periods, the court determines that juris-

diction over the entirety of Plaintiffs' claims is appropriate, and therefore the case was properly removed.

### D. Federal Enclave Jurisdiction

In light of the court's ruling and disposition of Plaintiffs' Motion to Remand on the grounds of federal officer jurisdiction, it is not necessary for the court to determine whether federal enclave jurisdiction exists. However, in the interest of completeness, the court notes that from the time of construction of the Phillips Butadiene Plant in 1943, until its sale to Phillips in 1955, the plant was owned by the federal government and was considered an instrument of national security. *See* Def.'s Opp., Ex. F at 2, 10 (General Warranty Deed conveying the facility to Phillips, and including a National Security Clause to protect government interests); *see also id.*, Ex. G at 1 (Bill of Sale indicating a prior owner, the United States government, and a subsequent owner, the Phillips Chemical Company).

As stated above, Plaintiff has claimed that Reed was exposed to leukemia-inducing agents from 1944 until 1979. For a period of time during the construction and operation of the plant, from 1944–1955, the federal government owned the Plains Butadiene Plant in its entirety. Therefore, during that period of time the facility was a federal enclave. "[I]n a toxic exposure case such as this, when the plaintiffs' claims arise out of exposure to chemicals on base in furtherance of their employment duties, enclave jurisdiction is properly invoked." *Akin*, 851 F.Supp. at 822. Moreover, since Plaintiffs did not and could not separate the periods of exposure between 1944 through 1955, and 1955 through 1979, jurisdiction in federal court properly exists for claims arising from the entire period.

Thus, the court finds that Phillips properly invoked federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) for the removal of this case, with supplemental jurisdiction over the remaining state law claims. Further, the court also finds that removal jurisdiction is proper under Art. I, § 8, cl. 17 of the United States Constitution, with supplemental jurisdiction over the remaining state law claims. Plaintiff's Motion to Remand is hereby DENIED.

### IV. DEFENDANT'S MOTION TO TRANSFER UNDER § 1404(a)

### A. Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The factors a court may consider for a § 1404(a) transfer include: (1) the plaintiffs choice of forum; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the accessibility and location of sources of proof; (5) the location of counsel; (6) the relative congestion of the courts' dockets; (7) accessibility of the premises to jury view; (8) relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit; and (9) the time, cost, and ease in which the trial can be conducted, and all other practical considerations relative to the trial. *Lindloff v. Schenectady Intern.*, 950 F.Supp. 183, 185 (E.D.Tex.1996); *Fletcher v. Southern Pac. Transp. Co.*, 648 F.Supp. 1400, 1401 (E.D.Tex.1986) (collecting authorities). The district court's determination to transfer a case will be reversed only for an abuse of discretion. *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 738 (5th Cir.1993).

### B. Analysis

#### (1) Plaintiffs' choice of forum

Plaintiffs claim that Reed's exposure occurred at the Borger facility, and they do not challenge the propriety of venue in the Northern District. Plaintiffs argue, however, that their choice of forum should receive both "great deference" and "high esteem" from the trial court. Pls.' Resp. to Def.'s Mot. to Transfer Venue (hereinafter "Pls.' Resp.") at 3 (citing *Emrick v. Calcasieu Kennel Club, Inc.*, 800 F.Supp. 482 (E.D.Tex. 1992)). Plaintiffs argue that their choice of forum should not be disturbed unless the balance of factors greatly favors the defendant. Pls.' Resp. at 4 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and collecting authorities).

■ The court disagrees. First, the deference given to a plaintiff's choice of forum is greater in a *forum non conveniens* transfer than it is in a § 1404(a) transfer. *Continental Airlines v. American Airlines,* 805 F.Supp. 1392, 1395 (S.D.Tex.1992); *see also Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (district courts have more discretion to transfer cases under § 1404(a) than they do to dismiss cases for *forum non conveniens* ). For example, in *Box v. Ameritrust Texas, N.A.,* 810 F.Supp. 776, 780–81 (E.D.Tex.1992), the court held that great deference was to be given to a plaintiff's choice of forum in a § 1404(a) case. However, *Box* relied on the Supreme Court's opinion in *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which was a *forum non conveniens* case. The Supreme Court has since clarified the fact that transfers under § 1404(a) should be examined under a different standard than transfers under the common law doctrine of *forum non conveniens.* *Norwood,* 349 U.S. at 32. A transfer under § 1404(a), which is what Phillips requests in this case, should be granted more easily than a transfer under the doctrine of *forum non conveniens. Id.* As a result, the court does not believe that, for purposes of a § 1404(a) transfer, the plaintiffs' choice of forum is entitled to the same deference as it would receive were a transfer sought under the doctrine of *forum non conveniens. See Continental Airlines,* 805 F.Supp. at 1395–96.

■ Second, while it is true that plaintiffs' choice of forum should be accorded some deference, that deference disappears when the lawsuit has no connection whatsoever to the venue chosen. *See, e.g., Lindloff,* 950 F.Supp. at 185; *Morgan v. Illinois Cent. R.R. Co.,* 161 F.Supp. 119, 120 (S.D.Tex. 1958). In this case, Reed was exposed to the chemicals at the Phillips plant in Borger, Texas. The plant is in Hutchinson County, located within the Northern District of Texas, Amarillo Division. Plaintiffs point out that they filed the suit in Jefferson County, Texas, but dispute no other contention of Phillips regarding the location of the events giving rise to this lawsuit. Pls.' Resp. at 4. Since most, if not all, of the operative facts occurred in Borger, Plaintiffs' choice of fo-

rum is given reduced significance. *See Lindloff,* 950 F.Supp. at 185.

*(2) Availability of compulsory process for the attendance of unwilling witnesses*

■ "The convenience of the witnesses is arguably the most important factor in deciding whether a case should be transferred pursuant to section 1404(a)." *Continental Airlines,* 805 F.Supp. at 1396. In determining the "convenience of the witnesses," the court will consider both the availability of compulsory process and the cost of obtaining witnesses' testimony.

■ Phillips argues that the parties will need to have the availability of process to compel the presence of unwilling witnesses, residing in or around Hutchinson County, to appear at the trial of this case. Def.'s Mot. to Transfer at 2. Phillips also argues that some witnesses beyond the subpoena power of this court, but within the subpoena power of the Northern District, may not be able to be compelled to attend unless subpoenaed. *Id.* at 4. Plaintiffs argue that Phillips has made conclusory allegations regarding the availability of witnesses, and that Phillips provided no evidence (1) that the subpoena power of the court would have to be used; or (2) that the witnesses that would have to be subpoenaed are not within a 100 mile radius of Beaumont, thus subjecting them to the subpoena power of this court. Pls.' Resp. at 5–6.

The court does not believe that a party has to prove that certain witnesses are unwilling to testify, or that a subpoena will have to be issued. In fact, it is more likely than not that some subpoenas will be issued in the normal course of litigation so that the witnesses' presence can be assured, even if they plan on coming voluntarily. Second, Phillips has provided evidence that the material fact witnesses in this case are primarily found in Borger, Texas. For example, Phillips has provided the court with copies of Plaintiffs' Answers to Interrogatories. Those Answers indicate that, according to Plaintiffs, all persons with relevant knowledge to the lawsuit live in Borger, Fritch, Garland, or Houston, Texas. Def.'s Reply, Ex. A at Question 9. Thus, four out of six live in Borger or Fritch,

which are located in Hutchinson County, Texas, in the Northern District of Texas, Amarillo Division. And, as to the remaining two witnesses, neither Garland nor Houston, Texas are within the Eastern District of Texas.

Further, Phillips provided the court with a copy of the Initial Disclosures submitted by its co-defendant, Texas Olefins Company ("Texas Olefins"). Def.'s Reply, Ex. B at Question 1. Those disclosures indicate that every material fact witness that could be specifically identified by Texas Olefins lives outside of the Eastern District. Of the eleven people identified, seven live in Borger, Fritch, or Amarillo, Texas. *Id.* Based upon the information before the court, at least a majority of the witnesses reside within the Northern District of Texas and beyond the subpoena power of this court. Therefore, this factor weighs in favor of a transfer.

### (3) The cost of obtaining the attendance of willing witnesses

Plaintiffs argue that Phillips has made conclusory allegations regarding the cost of obtaining the attendance of willing witnesses, and that Phillips has offered no proof that it would be less costly to conduct the trial in the Northern District, Amarillo Division than it would be to conduct the trial in Beaumont. Pls.' Resp. at 6–7.

As stated in the analysis of the previous factor, Defendant has provided evidence that most of the material fact witnesses in this case reside in the Northern District of Texas, Amarillo Division. Therefore, it is a logical inference that it would be cheaper for the parties to secure the testimony of those witnesses, even if willing, if the case was heard closer to their residences. Further, Phillips has also provided evidence to the court that Plaintiff Wilma Reed's own counsel claims that Wilma Reed is "totally disabled." Def.'s Reply, Ex. C. Defendant submitted a letter indicating that Plaintiffs' counsel asked for a deposition in this case to be relocated to Borger, Texas because of Wilma Reed's "inability to travel." *Id.* Presumably, Ms. Reed is a willing witness in this case, and all parties have identified her as a person with knowledge of material facts. It is difficult for the court to believe that trying the case

farther from her home will be more convenient for someone who is totally disabled.

Due to the fact that most of the witnesses identified as likely to testify do not live in the Eastern District of Texas, and that a majority of them live within the Amarillo Division of the Northern District of Texas, this factor weighs in favor of a transfer.

### (4) The accessibility and location of sources of proof

Plaintiffs argue that Phillips has made conclusory allegations regarding the accessibility and location of sources of proof. Pls.' Resp. at 8. Phillips has replied by providing evidence that the decedent's doctor and oncologist reside in Borger and Amarillo, respectively, and that the only hospital at which the decedent received treatment was in Amarillo, where the decedent was treated with chemotherapy. Def.'s Reply, Ex. A at Questions 11–12. Moreover, Plaintiffs claim that the decedent was never hospitalized for any condition other than leukemia. *Id.* at Question 14. Therefore, Plaintiffs' Answers to Interrogatories provide evidence that the medical proof in this case is located in the Northern District of Texas, Amarillo Division.

Further, Plaintiffs claim that the only place of exposure that caused the leukemia was the Plains Butadiene Plant in Borger, Texas. *Id.* at Question 8. The place of exposure is therefore in the Northern District, and the employee records and records of materials supplied to the plant are presumably located in Borger. By contrast, the court has no evidence before it that would support a finding that any documentary proof exists in Beaumont or within the Eastern District of Texas. Therefore, this factor also weighs in favor of a § 1404(a) transfer.

### (5) The location of counsel

According to the court's docket, Plaintiffs' counsel is in Beaumont. Defendant Fina Oil & Chemical Company's counsel is also in Beaumont. Defendants Sun Company, Inc. and Union Oil Company of California's counsel is located in Beaumont. Defendant Texas Olefin's counsel is in Houston, and Defendant Phillips' counsel is in Houston.

As Plaintiffs freely admit, however, "the location of a party's counsel ... is a factor that the vast majority of cases hold is entitled to little or no consideration in a 1404(a) motion." Pls.' Resp. at 4 (citing *Americas Ins. Co. v. Engicon, Inc.*, 894 F.Supp. 1068 (S.D.Tex.1995)). The court agrees. The convenience of the witnesses and the accessibility to sources of proof are far more dispositive. Nevertheless, the court finds that this factor favors denying the transfer and keeping the case in the Eastern District.

### (6) The relative congestion of the courts' dockets

The court is unaware of the level of congestion on the docket of the Northern District, Amarillo Division. Due to this lack of information, the court cannot make a determination as to this factor.

### (7) Accessibility of the premises to jury view

At this point in the litigation it is impossible to tell whether access to the premises at the Phillips facility will be necessary for the jury's determination of the disputed issues. Nevertheless, it may become necessary at some point for the jury to view the place of exposure. Since Plaintiffs allege that the decedent's alleged exposure occurred solely at the Plains Butadiene Plant in Borger, Texas, and since there is no evidence of any location within the Eastern District being material to the case, this factor weighs in favor of a transfer.

### (8) Relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit

The alleged exposure and damages took place in Borger, Texas and have no connection whatsoever to the Eastern District of Texas. All of the operative facts seem to have occurred in Hutchinson County, and "the citizens of that county would have a strong interest in correcting an alleged wrong in their community." *Lindloff*, 950 F.Supp. at 186. Consequently, this factor weighs in favor of transfer.

### (9) The time, cost, and ease in which the trial can be conducted, and all other practical considerations relative to the trial.

"The last factor is a catch-all, where the court should consider efficiency and other practical considerations." *Id.* Plaintiffs argue that since the Eastern District of Texas has implemented a Civil Justice Expense and Delay Reduction Plan, that as a practical matter the trial can be conducted and concluded much more quickly in the Eastern District "than it could be in an alternative forum that lacks a comparable Plan." Pls.' Resp. at 8–9 (citing *Box v. Ameritrust Texas, N.A.*, 810 F.Supp. 776, 781 (E.D.Tex.1992)).

Phillips points out, meanwhile, that the Northern District does have a Civil Justice Expense and Delay Reduction Plan. Def.'s Reply at 6–7. The court agrees. The Northern District of Texas adopted its own Civil Justice Expense and Delay Reduction Plan on March 22, 1993. N.D.TEX.CIV. JUSTICE EXP. & DELAY REDUCTION PLAN, *found in* TEX.R. COURT FEDERAL 280–83. The Plan went into effect on July 1, 1993, and was incorporated into the Local Rules by its own terms. *Id.* XII, *found in* TEX.R. COURT FEDERAL 283 ("This Plan is adopted as Miscellaneous Order No. 46, and is effective as a Local Rule and will be construed as such.") The Plan expressly applies to all cases filed after July 1, 1993, and at the discretion of the court may also apply to cases filed before that date. *Id.*

According to a certified copy of the state court's docket sheet, this case was originally filed in state court on August 10, 1995. Thus, even if the original date of filing is used, the Northern District's Plan would automatically be in effect in this action. Therefore, this factor weighs neither in favor of, nor against, transfer.

### C. Disposition of this Motion

As shown above, the sources of proof, witnesses, and necessary records are substantially closer to Amarillo than they are to Beaumont. Further, Plaintiff Wilma Reed's attorney has represented to the parties that Ms. Reed is "totally disabled." It is very difficult for Plaintiff Wilma Reed, a party

and witness in this case, to travel long distances from her home in Borger, Texas. Finally, there is a strong nexus between the alleged wrongdoing and exposure and the citizens of the Northern District. The only factor truly favoring Plaintiffs' choice of forum is the fact that their lawyers reside in Beaumont—that by itself is not enough. Balancing the necessary factors, the court is of the opinion that Defendant Phillips Petroleum Company's Motion to Transfer Venue should be GRANTED. Therefore, the court hereby ORDERS that this case be TRANSFERRED to the Amarillo Division of the Northern District of Texas.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is hereby DENIED. Further, Defendant's Motion to Transfer Venue is hereby GRANTED. This case is hereby TRANSFERRED to the Amarillo Division of the Northern District of Texas. It is so ORDERED.