Larry FAULK, et al., Plaintiffs,

v.

OWENS–CORNING FIBERGLASS Corp., et al., Defendant.

No. 1:99CV180 (TH).

United States District Court,
E.D. Texas,
Beaumont Division.

May 26, 1999.

Christopher Matthew Parks, Parker, Parks & Rosenthal, Port Arthur, TX, for Plaintiffs.

Walter Clay Cooke, Kenneth S. Wall, Brown McCarroll & Oaks Hartline, Houston, TX, Thomas John Ward, Brown McCarroll & Oaks Hartline, Longview, TX, for Anchor Packing Company, Garlock Inc., defendants.

David A. Livingston, Livingston & Miller, Houston, TX, for Aqua–Chem Inc., defendant.

Gary Dale Elliston, DeHay & Elliston, Dallas, TX, for T & N PlC., A.P. Green Industries Inc., Armstrong World Industries Inc., Asbestos Claims Management Corp., Certainteed Corp., Dana Corp., Flexitallic Inc., Riley Stoker Corp., Turner & Newell PLC, Union Carbide Corp., U.S. Gypsum Co., Flexitalic Gasket Co. Inc., Quigley Company Inc., defendants.

Mel Bailey, DeHay & Elliston, Dallas, TX, for Georgia–Pacific Corp, United States Mineral Products Company, defendant.

Phillip Samuel Brown, Wilson Elser Moskowitz Edelman Dicker, Dallas, TX, for Brown & Root Inc., defendant.

Edward Morgan Carstarphen, III, Douglas B. Dougherty, Gary Joe Ellis, Woodard Hall & Primm, Houston, TX, for Monsanto Company, defendant.

James H. Chesnutt, II, Orgain Bell & Tucker, Beaumont, TX, for Entergy Gulf States Inc., defendant.

Sandra French Clark, Keith William Foley, Mehaffy & Weber, Beaumont, TX, for W R Grace & Co–Conn, Davidson Chemical Corp., defendants.

Thomas F. Dougall, Bowers Orr & Dougall, Columbia, SC, for Proko Industries Inc., defendant.

Kurt D. Groten, Darlea Stanly Feldt, Wesley Paul Link, Phillips & Akers, Houston, TX, for Uniroyal Holding Inc., defendant.

William Miller Thomas, Fairchild Price Thomas & Haley, Center, TX, David Jonathan Fisher, Fairchild Price Thomas & Haley, LLP, Center, TX, for J T Thorpe Company, defendant.

Gene M. Williams, Keith William Foley, Mehaffy & Weber, Beaumont, TX, for General Electric, defendant.

Sharla Jo Frost, James Hayes Powers, Gwendolyn Sue Frost, Powers & Frost, Houston, TX, for Pittsburgh Corning Corporation, defendant.

Thomas Wilson Taylor, Andrews & Kurth, Houston, TX, Alexis Juan Gomez, Andrews & Kurth LLP, Houston, TX, for Rapid–American Corporation, fka Glen Alden Corporation, Rapid American Corporation, BP Oil Company, defendants.

Rob L. Wiley, John L. Hill, Jr., Richard Harry Callison, Locke Liddell & Sapp, Houston, TX, John Baxter Hall, Liddell Sapp Zivley Hill & LaBoon LLP, Houston, TX, for Metropolitan Life Insurance Company, defendant.

Frank G. Harmon, III, Crain Caton & James, Houston, TX, for Crown Cork & Seal Company, Inc, defendant.

James Mayer Harris, Jr., Holmes & Harris, Beaumont, TX, for Flintkote Company, defendant.

Kathryn Oakes Hermes, DeHay & Elliston, Dallas, TX, for Synkloid Company, defendant.

Gail Cucancic Jenkins, Jenkins Grove & Martin, Beaumont, TX, for Kaiser Aluminum & Chemical Corporation, defendant.

D. Allan Jones, Orgain Bell & Tucker, Beaumont, TX, for Arco Chemical Company, nka, Lyondell Chemical Worldwide Inc., Atlantic Richfield Co., Hercules Inc., Temple Eastex, Temple–Inland Forest Products Inc., Temple Inland Inc., Quigley Company Inc., defendants.

George Jerome Kacal, Jr., Dunn Kacal Adams Pappas & Law, Houston, TX, for A C & S Inc., defendant.

Mark Reese Pharr, III, Mary Mauro, Galloway Johnson Tompkins & Burr, Houston, TX, for Combustion Engineering Inc., defendant.

Debra S. Fitzgerald, Kim M. Meaders, Crouch & Hallett, Dallas, TX, for North American Refractories Company, defendant.

Peter A. Moir, Baker & Botts, Dallas, TX, for Owens–Illinois Inc., defendant.

John Jeffrey Mundy, Austin Patrick Tighe, Michael Singley, Brobeck Phleger & Harrison, Austin, TX, for Owens–Corning Fibreglas Corporation, defendant.

John W. Newton, III, Orgain Bell & Tucker, Beaumont, TX, for General Motors Corporation, Navistar International Transportation Corp., defendants.

Franklin Albright Poff, Jr., Crisp Jordan & Boyd, Texarkana, TX, for General Refractories Company, defendant.

B. Stephen Rice, Hays McConn Rice & Pickering, Houston, TX, for Conoco Inc., Ethyl Corporation, Rohn & Haas Texas Inc., Shell Oil Co., Rohm & Haas Bayport Inc., Star Enterprise, Phillips Chemical Co., Texaco Chemical Co., Texaco, Inc., defendants.

James Michael Riley, Jr., Lawrence A. Lynn, Coats Rose Yale Holm Ryman & Lee, Houston, TX, for Foster Wheeler Energy Corporation, defendant.

H. Daniel Spain, Spain & Hastings, Houston, TX, for Harbison–Walker Refractories Company, Formerly a Division of Indresco Inc., defendant.

Kenneth S. Wall, Bill Duane Fountain, Todd Wade, Brown McCarroll & Oaks Hartline, Houston, TX, for Kelly–Moore Paint Company Inc., defendant.

R. Mark Willingham, Fairchild Price Thomas Haley & Willingham, Houston, TX, for Asten Group Incorporated, defendant.

Tori Smith Levine, Brown McCarroll & Oaks Hartline, Dallas, TX, for A M F Incorporated, defendant.

George Shipley, Baker & Botts, Houston, TX, for American Cyanamid Company, BASF Corp., Crown Central Petroleum Corp., Goodyear Tire & Rubber Co., Marathon Oil Co., Houston Lighting and Power Co., Sun Pipeline Co., Pure Oil Corp., Union Oil Co. of Cal., Velsicol Chemical Corp., Sun Company Inc., defendants.

Donald E. Godwin, Godwin & Carlton, Dallas, TX, for SSER Industries Inc., defendant.

Mark A. Freeman, Stevens Baldo & Freeman LLP, Beaumont, TX, for Keystone Shipping Company, American Trading & Production Corp., Keystone Thaneship Corp., defendants.

Robert Odell Lamb, Thompson Coe Cousins & Irons, Dallas, TX, for Royal

Insurance Company of America, defendant.

John Emory Pipkin, Houston, TX, for Rubber Manufacturers Association, defendant.

Deborah S. Coldwell, Strasburger & Price, Dallas, TX, for Travelers Insurance Company, defendant.

Michael Ray Walzel, Stevens Baldo & Freeman LLP, Beaumont, TX, for Triplex Inc., defendant.

Kurt Christopher Kern, R. Michele Sowers, Hartline Dacus Dreyer & Kern, Dallas, TX, for Honda North America Inc., defendant.

Timothy R. Bersch, Gilpin Paxson & Bersch, Houston, TX, for Sabaru of America Inc., Volkswagon of North America, defendant.

Arthur Ray Almquist, Mehaffy & Weber, Houston, TX, for Ameripol–Synpol Corporation, B F Goodrich Co., Dow Chemical Co., defendants.

Thomas Wilson Taylor, Andrews & Kurtch, Houston, TX, for Amoco Chemical Company, Ration, Amoco Oil Company, defendants.

Reid Hardin Erwin, Jr, Matthiesen Chase & Erwin, Houston, TX, for Armco Inc., defendant.

David W. Ledyard, Strong Pipkin Nelson & Bissell, Beaumont, TX, for Chevron USA Inc., Exxon Corporation, Gulf Oil Corporation, Occidental Chemicals Corporation, Oxy USA Inc., Chevron Chemical Company, Cities Service Oil & Gas Corporation, Candianoxy Offshore Production Company, defendants.

Ellen B. Malow, Angela Rae Hoyt, Kasowitz Benson Torres & Friedman LLP, Houston, TX, for Hoechst Celanese Chemical Group Inc., defendant.

Robert L. Adams, Dunn, Kacal, Adams, Pappas & Law, Houston, TX, for PPG Industries Inc., defendant.

Lauren M. Robbins, Benckenstein & Oxford LLP, Houston, TX, for United States Steel Corporation, defendant.

David M. Taylor, Kevin Barber Brown, Thompson Coe Cousins & Irons, Dallas, TX, William Carroll Book, Jr., Raymond T. Matthews, Houston, TX, for Minnesota Mining and Manufacturing Company, aka "3M", defendant.

## MEMORANDUM AND OPINION ORDER

HEARTFIELD, District Judge.

Before this Court is Plaintiffs' *Motion to Remand* [7]. Having considered the motion, the numerous responses, the supplemental briefs, and the arguments of counsel at a May 11, 1999 hearing, this Court finds it lacks subject matter jurisdiction in the above-entitled cause of action. Accordingly, this Court GRANTS Plaintiffs' *Motion to Remand* [7] and under Title 28 U.S.C. § 1447(c) REMANDS this case to the 172nd Judicial District Court for Jefferson County, Texas from whence it improperly came.

### 1. Procedural History—Tracking the X–Files

On April 1, 1999 Defendants in the above-entitled action removed this case from the 172nd Judicial District Court for Jefferson County, Texas. A companion case—*VanOuwerkerk, et al. v. AcandS, et al.* (1:99–cv–179)—was also removed on that same date.[1] Both of these cases are asbestos cases; and in both cases Plaintiffs filed motions to remand. However, on May 3, 1999 the Judicial Panel on Multidistrict Litigation entered its *Conditional Transfer Order 149 ("CTO–149")* conditionally transferring both of these cases (the "'179 and '180 cases") to the United States District Court for the Eastern Dis-

---

1. The removal issues (and consequently the motions and briefs) are identical in both the '179 and '180 companion cases. Accord-

ingly, a companion order granting the motion to remand in that case will be issued today, too.

trict of Pennsylvania, the Honorable Charles Weiner presiding.[2]

On April 26, 1999, the Honorable Howell Cobb recused himself from the '179 *VanOuwerkerk* case. Two days later, on April 28, 1999, this Court was assigned that '179 case. On May 7, 1999, the Honorable Richard Schell recused himself from this case—the '180 *Faulk* case. On the same day—May 7, 1999—this Court was assigned this case—the '180 case. At first, this Court was unable to locate either of these files in their entirety.[3] Although this Court's (occasionally) trusty law clerk was able to track down the bulk of the '180 copy file, the '179 copy file eluded this Court until May 20, 1999. Nonetheless, recognizing the shrinking time period set by the MDL's *Conditional Order of Transfer 149*, this Court set Plaintiff's *Motion to Remand* for hearing on May 10, 1999.[4]

*Plaintiffs' Third Amended Petition* alleges that Plaintiffs were exposed to asbestos at various facilities owned or operated by the Defendants "in Texas ... and Louisiana." *Plaintiffs' Third Amended Petition* 29. "From 1936 and extending up until the present time or until their deaths, Plaintiff craftsmen worked as construction tradesmen at the refineries, chemical plants and other industrial facilities of the premises Defendants ..." *Id.* Plaintiffs seek relief from the Defendants under the Texas common law of negligence and gross negligence—specifically, for failure to warn about asbestos. Defendants removed both the '179 and the '180 cases alleging this Court has removal jurisdiction based upon 28 U.S.C. § 1442(a)(1) federal officer jurisdiction, 28 U.S.C. § 1331(a)(1) federal enclave jurisdiction as defined by Article I § 8, Cl. 17 of the United States Constitution, and 28 U.S.C. § 1442(a)(2) as a title holder deriving title from a federal officer. For these reasons, Defendants argue these cases belong in federal court. Defendants are wrong.

### 2. Law of Removal

■ Whether or not removal was proper is determined "on the basis of claims in the state court complaint as it exists at the time of removal ..." *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir.1995); *see Nolan v. Boeing*, 919 F.2d 1058, 1063 fn. 5 (5th Cir.1990) ("In removed cases, the existence of federal subject matter jurisdiction is determined at the time of removal."). This rule is, to say the least, well-grounded. In 1914, the Supreme Court wrote:

2. Despite this conditional order of transfer, this Court nonetheless retains jurisdiction since the order does not become effective until filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania, and "transmittal of this [conditional transfer] order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel." *Conditional Transfer Order 149*. On May 17, 1999 Plaintiffs filed *Plaintiffs' Notice of Opposition to Conditional Transfer Order (CTO-149)* with the Clerk of the Panel in accordance with Rule 7.4(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Thus, this Court has jurisdiction to determine Plaintiffs' *Motion to Remand*. *See Panel Rule 1.5*, 181 F.R.D. 1, 3 (1998).

3. Of course, the original files are kept in the clerk's office downstairs. However, there are "copy files" for the judges' offices. Use of copy files prevents spoliation of the original files by this Court and its unkept law clerks (who are rarely permitted to venture beyond the library). Thus, while use of the original files is possible, it is not readily appreciated by those parties interested in protecting the integrity of the original files—often (well, *occasionally*) needed for appellate review.

4. Several of the Defendants moved to continue this hearing. Aside from the ever-shrinking window of jurisdiction by this Court under the MDL's *Conditional Transfer Order 149*, this Court specifically noted that it was to be in Marshall, Texas for two weeks beginning May 11, 1999. Afterwards, it had additional trials here, in Beaumont. Finally, this Court didn't even get the '180 case until May 7, 1999—merely four (4) days before it was to leave for Marshall. Regardless, all parties have been afforded additional time to supplement their briefs.

Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Moreover, once a defendant properly removes a case to federal court, a plaintiff may not defeat that removal by simply amending the complaint. *Cavallini, supra*, at 265 ("... [R]emoval jurisdiction should be determined on the basis of the state court complaint at the time of removal, and ... a plaintiff cannot defeat removal by amending it."); *see Robinson v. Quality Ins.*, 633 F.Supp. 572, 577 (S.D.Ala.1986) ("[A]ction by a plaintiff subsequent to removal cannot deprive this Court of jurisdiction if the removal was proper when filed."); *see also Brown v. Southwestern Bell*, 901 F.2d 1250, 1254 (5th Cir.1990); *Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989) ("[R]emoval is not defeated by the fact that, after the case is removed, the plaintiff files a new complaint, deleting the federal claim or stating a claim that is not removable."); *see also Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 989 (5th Cir.1988) ("The assertion of a claim under a federal statute alone is sufficient to empower the District Court to assume jurisdiction over the case ...") (internal quotation omitted) (footnote citations omitted), quoted in *Cervantez v. Bexar County Civil Service Comm'n*, 99 F.3d 730, 733 (5th Cir.1996).

Aside from the numerous cases holding a plaintiff may not re-write his complaint so as to defeat federal jurisdiction, the Supreme Court has opined: "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720, (1988). Plaintiffs urge this Court to sever out the removing defendants so that they may proceed against the non-removing defendants in state court. That is, Plaintiffs now want to re-write their *Third Amended Original Petition* in such a manner that permits remand of some defendants despite their allegedly proper removal. In *Carnegie,* the Supreme Court addressed this issue: "If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." *Id.* at 357, 108 S.Ct. 614. Here, Plaintiffs have not yet manipulated the forum; rather, they ask this Court to sever the non-removing defendants for remand. Such an endeavor by this Court appears to implicate *Carnegie–Mellon.*

 Nevertheless, when presented with a motion to remand, the removing Defendants have the burden to establish that federal jurisdiction exists. *Winters v. Diamond Shamrock Chemical Co.,* 901 F.Supp. 1195 (E.D.Tex.1995), *aff'd,* 149 F.3d 387, 397 (5th Cir.1998); *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Indeed, this Court need not wait on a motion to remand since it can *sua sponte* remand an improperly removed case. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson,* 257 U.S. at 97, 42 S.Ct. 35). Moreover, if there are significant doubts about the propriety of removal, those doubts should be resolved *against* removal. *In re Marriage of Smith,* 549 F.Supp. 761 (W.D.Tex.1982); *Cameron v. Hodges,* 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888);

*State of New Jersey v. Moriarity*, 268 F.Supp. 546, 554 (D.N.J.1967); *Breymann v. Pennsylvania, O. & D.R. Co.*, 38 F.2d 209 (6th Cir.1930). In this particular case, Plaintiffs moved for remand arguing that this Court lacks subject matter jurisdiction. If this Court lacks subject matter jurisdiction then it *must* remand this case to the state court from whence it came—the 172nd Judicial District for Jefferson County, Texas.[5] Plaintiffs are right. This case no more belongs in federal court than it does at Multi–District Litigation ("MDL").[6] Rather, this case belongs in state court and that is where it is going.

### 3. No Federal Officer Jurisdiction

Title 28 U.S.C. § 1442(a)(1) provides an exception to the general rule that an alleged defense to a state-law issue—even if it raises a federal question—is insufficient to confer subject matter jurisdiction necessary for proper removal. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Title 28 U.S.C. § 1442(a)(1) says, in part:

 (a) A civil action or criminal prosecution commenced in a state court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

 (1) The United States or any agency thereof or any officer (or any person

acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue . . .

28 U.S.C. § 1442(a)(1) (as amended 1996) (West Supp.1998). This is the "federal officer" statute that Defendants say confers subject matter jurisdiction upon this Court. It does not.

■ How does this Court apply this federal officer statute? Thankfully, in *Mesa v. California*, the Supreme Court stuck some prongs in this statute so that courts like this one can properly handle it. 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Defendants have the burden to establish the following:

 1) the removing defendant must be a federal officer or a "person" acting under a federal officer;

 2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and

 3) the removing defendant asserts a colorable federal defense.[7]

**5.** However, with the recent ruling ·by the Supreme Court in *Ruhgras AG v. Marathon Oil Co.*, this Court need not turn to subject matter jurisdiction first in light of other jurisdictional challenges. —— U.S. ——, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Here, however, the subject-matter jurisdictional question is the most easily resolved jurisdictional question.

**6.** The parties chase each other down the following rabbit ·trial: whether Defendants seek to "bury" Plaintiffs' asbestos lawsuit at MDL. This Court joins Defendants in noting that the Honorable Charles Weiner has closed roughly forty thousand (40,000) of the sixty-two thousand (62,000) asbestos cases consolidated before him. *See In re Asbestos Products Liability Litigation*, (No. VI), No. MDL 875, (E.D.Pa.

1995). Nonetheless, how the efficiency of Judge Weiner's court impacts this Court's jurisdictional analysis continues to elude this Court.

**7.** Did this Court forget a prong? Not really. Yes, some courts define the *Mesa* test as a four-prong test with separate "acting at the direction" and "causal nexus" prongs. *See e.g., Gauthe v. Asbestos Corp.*, No. Civ. A. 96–2454, 1997 WL 3255 (E.D.La.1997); *Overly v. Raybestos–Manhattan*, No. C–96–2853, 1996 WL 532150 (N.D.Cal.1996). However, the Fifth Circuit recently combined both the "acting at the direction" and "causal nexus" prongs. *Winters*, 149 F.3d at 398. Either way, the *Mesa* test still requires defendants to

*Winters v. Diamond Shamrock Chemical Co., supra,* at 398–400; *see also Reed v. Fina Oil & Chemical Co.,* 995 F.Supp. 705 (E.D.Tex.1998).

### A. Defendants Are "Persons"—Defendants Meet the First Prong

Under Fifth Circuit law, the removing Defendants are "persons" within the meaning of § 1442(a)(1). *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55, 58 (5th Cir.), *cert. denied,* 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975); *Akin v. Big Three Industries,* 851 F.Supp. 819, 823 (E.D.Tex.1994); *Winters, supra,* at 398 (quoting *International Primate v. Administrators of Tulane Educ.,* 22 F.3d 1094 (5th Cir.1994) (unpublished opinion)). Indeed, in light of the Fifth Circuit's clear voice in this matter, Plaintiffs themselves concede that removing Defendants are "persons" within the meaning of the federal officer statute. *See Motion to Remand* [7] 8. Thus, Defendants meet the first prong of the *Mesa* test.

### B. Defendants May Be "Acting at the Direction of a Federal Officer," But No "Causal Nexus" Exists—Defendants Fail to Meet the Second Prong

**This is a premises liability case—not a products case; and Defendants' attempt to transmogrify their entire facilities (i.e., their premises)** [8] **into "products" misapplies precedent and fails the second prong of the *Mesa* test.** Once again, in order to meet the second prong of *Mesa,* the removing Defendants must show they were acting at the direction of an officer of the United States *and* that a causal nexus exists between their actions under color of federal office and the Plaintiffs' claims. There is no "causal nexus" between the removing Defendants' actions under the color of federal office and the Plaintiffs' claims. Thus, Defendants fail to meet the second prong of the *Mesa* test.

It would appear that the Eastern District of Texas, Beaumont Division is no stranger to the federal officer statute as a basis for removal. Indeed, Defendants point to several cases where this Court upheld removal under the federal officer statute despite motions to remand. *Winters, supra; Reed, supra; Akin, supra.* In *Winters,* the Honorable Howell Cobb held that defendant manufacturers of Agent Orange properly removed their case to federal court when sued by the plaintiff under negligence, products liability, and warranty claims for her alleged exposure to Agent Orange. In *Reed,* the Honorable Richard A. Schell held that defendant manufacturers of butadiene properly removed their case to federal court when sued by plaintiffs under negligence and products liability claims for their alleged exposure to butadiene. Finally, in *Akin,* the Honorable Howell Cobb found that defendants properly removed their case to federal court when sued by plaintiffs under negligence and strict products liability claims for their alleged exposure to chemicals at Tinker Air Force Base—a United States Air Force base in Oklahoma City, Oklahoma. Defendants' reliance on these cases is misplaced.

In order to show the "acting at the direction of a federal officer" portion of the second prong, the removing Defendants rely heavily upon *Reed, supra.* Indeed, one of the removing Defendants in this case—Phillips—was a removing defendant in the *Reed* case:

Phillips, one of the defendants in *Reed,* the same defendant in the instant case, provided the Court with "ample evidence [the same evidence provided to this

---

show both the "acting at the direction" and "causal nexus" portions—regardless whether they're separate prongs or just a single prong. One prong, two prongs—half empty, half full.

**8.** Defendants use the term "facilities" rather than "premises." Insofar as this Court is concerned, under these circumstances of this premise liability case there is no significant difference. Accordingly, this Court will use the two terms interchangeably.

Court] to show that it was operating under the direction and control of the federal government in the construction and operation of the butadiene plant, and in the transportation of the materials to and from the plant."

*Removing Defendants' Joint Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand ("Defendants' Joint Opposition")* [55] at 6. Now, removing Defendant Phillips tenders the same evidence previously tendered to Judge Schell in the *Reed* case. "Phillips has provided the Court in its supplemental factual memorandum herein the same documents and proof, relating to the same butadiene facility as was involved in *Reed.*" *Id.* at 7. So, argues Phillips, this Court should heed its own precedent and find— once again—that removing Defendant Phillips was acting at the direction of an officer of the United States.[9]

Yes, Judge Schell did say: "Phillips has provided the court with ample evidence to show that it was operating under the direction and control of the federal government in the construction and operation of the butadiene plant, and in the transportation of the materials to and from the plant." *Reed, supra,* at 710. Yes, removing Defendants did provide this Court with the same evidence previously tendered to Judge Schell for his removal analysis. And yes, Judge Schell found this very same evidence supported removal since it showed removing Defendant Phillips was acting at the direction and control of an officer of the United States. However, Defendants' reliance on Judge Schell's analysis in *Reed* fails for the same reason their reliance on *Winters* and *Akin* fails— **there is no causal nexus between the acts performed under color of federal office (the federally-controlled produc-**

tion of Avgas, butadiene, and steel) and the plaintiffs' claims (the non-federally controlled failure to warn about asbestos).

In order to concoct an otherwise non-existent causal nexus, the removing Defendants first excerpt a portion of *Akin* :

The plaintiffs' discovery responses indicated that certain chemicals had caused adverse health effects. The chemicals were emitted during the repair of GE's jet engines. The repair involved grinding engine parts manufactured by GE. *Plainly, when a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied.* GE, therefore, acted under a federal officer and has satisfied each of the requirements necessary to assert federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1).

*Akin, supra,* at 823–24 (Defendants' emphasis). After excerpting this portion of *Akin,* Defendants make the following analogy:

Here, analogizing to the facts of *Akin,* the "product" is not a jet engine, but the very facilities at which plaintiffs claim to have worked. And, the allegedly injurious materials are not chemicals, but asbestos containing insulation without which such facilities could not have been constructed and/or operated. The nexus requirement is as clearly [10] met here by the removing defendants as it was met by GE in *Akin.*

*Defendants' Joint Opposition* at 9. Did you catch the leap? In *Akin,* the product allegedly causing the injuries *was the very product with specifications dictated by the*

---

9. It is helpful to remember that this case— the '180 *Faulk* case—was previously before the Honorable Richard Schell, the author of the *Reed* decision. The '179 *VanOuwerkerk* case was previously before the Honorable Howell Cobb, the author of the *Akin* and *Winters* decisions.

10. This Court remains ever-fascinated with hundred-page briefs "clearly" resolving "obvious" issues. If it's so clear and obvious, why the hundred pages?

*federal officer*—the General Electric jet engine whose repair *as dictated by the federal officer* allegedly caused the injuries. In this particular case, the Defendants argue the "product" allegedly causing the injuries are "clearly" "the very facilities at which plaintiffs claim to have worked." *Id.* But the "product" in *Akin* was not Tinker Air Force Base (the "facility") where plaintiffs worked during their alleged exposure to the jet engine chemicals. Similarly, the "product" in *Winters* was not the Saigon hospital (the "facility") where plaintiff worked during her alleged exposure to Agent Orange. Finally, the "product" in *Reed* was not the entire butadiene plant (the "facility") where plaintiffs worked during their alleged exposure to butadiene. In these cases, the products controlled by the federal officer were not the whole "facilities" owned or operated by the defendants. No, the products allegedly controlled by the federal officer were actually *products* like, jet engines, Agent Orange, and butadiene—not *facilities* like air force bases, hospitals, and plants.

In this case, the products allegedly controlled by the federal officer are the Av-Gas, the butadiene, and steel—just like the product controlled by the federal officer in *Akin* was the General Electric jet engine whose repair *as controlled by the federal officer* allegedly caused the injuries; just like the product controlled by the federal officer in *Winters* was Agent Orange whose production *as controlled by the federal officer* allegedly caused the injuries; and, finally, just like the product controlled by the federal officer in *Reed* was the butadiene whose production and transportation *as controlled by the federal officer* allegedly caused the injuries. A proper analogy would not permit the federal officer statute to shroud an entire facility from state-law claims simply because a federal officer dictates the specifications of the product manufactured there. Rather,

a proper analogy would tether the defendants' actions under the color of federal office to the plaintiffs' claims, thereby establishing the causal nexus necessary to support the second prong of the *Mesa* test. This is precisely what Judge Cobb did in *Akin* when he found the General Electric jet engine's repair *was dictated by the federal officer* and, consequently, this federal-officer-specified repair allegedly caused the plaintiffs' injuries. Here, since Defendants can not tether their actions under color of federal office (*the production of AvGas, butadiene, and steel*) directly to the plaintiffs' claims (*the failure to warn about exposure to asbestos*), Defendants seek to transmogrify their entire facilities into huge "products" whose specifications were dictated by a federal officer. But even this flawed effort fails; for throughout all of the myriad of documents submitted to this Court, there is no government "direction" or "control" with respect to warning about asbestos at these big facilities, err, "products" as Defendants call them. That is, there is no "causal nexus" between Defendants' actions under color of federal office and the Plaintiffs' claims.

In all of this Court's cases dealing with removal in light of the federal officer statute—*Winters, Reed,* and *Akin*—this Court's brethren found a causal nexus between defendants' actions under color of federal office and the plaintiffs' claims. Here, Defendants are attempting to extend these cases into new and uncharted territory.[11] In this particular case, Defendants seek shelter in the federal officer statute even though the federal officer was silent as to whether to warn about the dangers of asbestos. Moreover, the product whose manufacture was arguably "controlled" by the federal government *is not the product allegedly causing injury to the Plaintiffs.*[12]

---

11. Unprecedented precedent, if you will.

12. Defendants say their facilities contained "asbestos containing insulation without

which such facilities could not have been constructed and/or operated." *Defendants' Joint Opposition* 9. Well, this Court has a difficult time believing that asbestos was the only sub-

In *Winters*, the plaintiff's complaint alleged injury from exposure to a *product* manufactured by the removing defendant for the war—Agent Orange. Judge Cobb found "the Defense Department expressly issued detailed and direct orders to the defendants to supply a certain product [Agent Orange]." *Winters, supra*, at 398. Thus, Judge Cobb found the necessary causal nexus between the *defendants' federally-controlled manufacture of Agent Orange* and the plaintiffs' exposure to *defendants' federally-controlled Agent Orange.*[13]

In *Reed*, the "[p]laintiffs' complaint allege[d] acts taken in the production, manufacture, transport, and testing of butadiene," the very *product* allegedly causing injury to the plaintiffs. *Reed*, 995 *supra*, at 712. Judge Schell found "that production, manufacture and transport was overseen by the federal government to a very specific degree." That is, Judge Schell found the necessary causal nexus between the *defendants' federally-controlled production, manufacture, transport and testing of butadiene* and the plaintiffs' exposure to *defendants' federally-controlled butadiene. Id.*

Finally, in *Akin*, the plaintiffs' complaint alleged injury from exposure "to dust and fumes of the jet engine and jet engine parts" at a United States Air Force Base in Oklahoma City, Oklahoma (incidentally, a federal enclave). *Akin, supra*, at 821. Judge Cobb noted "that GE manufactured the jet engines repaired at Tinker under contract with the Secretary of the Air Force . . . [and] manufactured the engines pursuant to specifications set by the Air Force." *Id.* at 823. That is, Judge Cobb found the necessary causal nexus between the *defendants' federally-controlled repair of GE jet engines manufactured under specifications set by the Air Force* and plaintiffs' complaint over exposure to the *chemicals from defendants' federally-controlled repair of GE jet engines manufactured under specifications set by the Air Force.*

■ Now, let's look at Defendants' case in light of the afore-mentioned cases. In this case, the Plaintiffs' complaint alleges injury from the Defendants' failure to warn about asbestos. For the sake of argument, this Court concedes federal officer control as to Defendants' production of Avgas, butadiene, and steel under federal government specifications. But, according to the Defendants, there is a necessary causal nexus between *Defendants' federally-controlled production of Avgas, butadiene, and steel under federal government specifications* and Plaintiffs' complaint about the *Defendants' non-federally controlled failure to warn about asbestos.* Causal nexus? Of course not. Why not? Because the federal government provided no direction or control on warnings when using asbestos; moreover, the federal government did not prevent Defendants from taking their own safety precautions heeding state-law standards above the minimum standards incorporated in their federal contracts.[14]

---

stance on the face of the planet that Defendants could have used for insulation. Indeed, Defendants own expert says "[a]mosite and chrysotile asbestos was the *recommended* fiber for insulation materials used during World War II"—not the *only* fiber. *Certification of J. Leroy Balzer, Exhibit V to Defendants' Joint Opposition* (emphasis added). Regardless, this dispute is academic since Defendants fail to establish any necessary causal nexus between defendants' actions under color of federal office and the plaintiffs' claims. Another rabbit trail.

13. Indeed, Judge Cobb "determined that the Defense Department had contracted with the chemical companies for a specific mixture of herbicides which eventually became known as Agent Orange . . . [and] further found that the defendants were compelled to deliver Agent Orange to the government under threat of criminal sanctions." *Winters, supra*, at 398. In this case, no federal officer specifically controlled Defendants regarding the warnings about asbestos; and Defendants were not compelled to use asbestos under threat of criminal sanctions.

14. Here, the logic of the Fifth Circuit's combination of the "acting under" and "causal nexus" prongs becomes apparent. Defendants can bury this Court in federal government

Defendants want this court to read *Winters*, *Reed*, and *Akin* as extending *Boyle* to provide the federal officer defense to Defendants who, although manufacturing products with specifications dictated by a federal officer, nonetheless act negligently by failing to warn about dangerous conditions despite no impediment by the federal officer to do so. Indeed, of all the myriad of documents removing Defendants submitted to this Court, there is no direction or control by the federal officer relating to warning Plaintiffs about asbestos. In *Winters*, *Reed*, and *Akin*, the federal officer really did "make them do it" since they were acting at the direction and control of an officer of the United States *and* a causal nexus existed between their actions under color of federal office and the plaintiffs' claims. Not so in this case.

Here, there is no federal officer "direction" or "control" as to whether to warn Plaintiffs about asbestos. Rather, there are detailed, government specifications relating to the production of Avgas, butadiene, and steel—nothing about warning about asbestos. The federal officer remained completely silent as to whether to *warn* about the use of asbestos; this silence is fatal to the "causal nexus" necessary for the second prong. Thus, Defendants fail to meet the second prong of the *Mesa* test.

C. *Defendants Have No "Colorable Federal Defense" Under the Federal Officer Statute—Defendants Fail to Meet the Third Prong*

■ Finally, under the third and final prong of the *Mesa* test, the removing Defendants must assert a "colorable federal defense." In their briefs, Defendants strip this down to a mere pleading requirement while Plaintiffs inferentially try to dress it up as more than it really is. Well, every-body's wrong on this one. Yes, to the relief of removing defendants everywhere, the Supreme Court of the United States did say "[t]he officer need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). The Supreme Court on its holding in *Willingham*: "The central question at issue in *Willingham* was whether the defense of official immunity was sufficient to support removal under § 1442(a)(1). We held that the removal statute 'is broad enough to cover all cases where federal officers can raise a **colorable** defense arising out of their duty to enforce federal law . . .' In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Mesa*, *supra*, at 132–33, 109 S.Ct. 959 (quoting *Willingham*, *supra*, at 406–407, 89 S.Ct. 1813) (emphasis added). However, Defendants must do more than simply *plead a federal defense*. Rather, Defendants must plead a **colorable** *federal defense*.[15] Nevertheless, in determining whether a federal defense is "colorable" for jurisdictional determination, a court should not delve into "the validity of the defense" which "is a distinct subject" and "involves wholly different inquiries" apart from jurisdictional determination. *Mesa*, 489 U.S. at 129, 109 S.Ct. 959 (quoting *The Mayor v. Cooper*, 6 Wall. 247, 73 U.S. 247, 18 L.Ed. 851 (1867)); *see also Akin*, *supra*, at 823.

Here, the Defendants assert the 1) the government contractor defense (*Boyle*, *infra*), and 2) the immunity afforded under the Defense Production Act. *Defendants' Joint Opposition* [55] at 14. Defendants' failure to establish a causal nexus between their actions under the control of the federal officer and the Plaintiffs' claims also

regulations controlling their actions. But if there is no causal nexus between Defendants' actions in response to this control and the Plaintiffs' claims, then the government did not "make them do it" since the "it" was never under government control. *Mesa* properly fails in cases like this.

15. Respectfully, there have been things plead in this Court that are *less* than colorable.

fatally wounds their *Boyle* contractor "defense."

The *Boyle* prongs:

1) the federal government approved reasonably precise specifications for contract performance;

2) the performance of the contract conformed to those specifications; and

3) the contractor informed the government of any hazards associated with these specifications of which it was aware, and of which the government was not aware.

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585, *reh'g denied*, 489 U.S. 1047, 109 S.Ct. 1182, 103 L.Ed.2d 248 (1989). Here, there simply are no specifications regarding warnings about asbestos sufficient to invoke the *Boyle* contractor defense. Rather, there are federal government specifications regarding the production of Avgas, butadiene, and steel.[16]

The *Boyle* colorable federal defense finding in *Winters* : "[T]he evidence indicates that the defendants provided the Defense Department with ample warnings concerning the risks of the component parts of Agent Orange, but were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract." *Winters, supra*, at 401. The *Boyle* colorable federal defense finding in *Reed* : "The evidence here is more than sufficient to show that the federal government specified the exact quality and quantity of products to be used, produced and delivered by the Plains Butadiene Plant ... Presumably the specifications were followed. Further, since the

government dictated the quality and content of the products and the testing of the products, then for the limited purpose of determining whether a colorable federal defense has been claimed, the court can presume that the government was informed of the attendant dangers of these products." *Reed, supra*, at 712. Finally, the *Boyle* colorable federal defense finding in *Akin* : "Hodges [manager of General Electric's Midwest City Office] states that GE manufactured the jet engines repaired at Tinker under contract with the Secretary of the Air Force or his delegee. According to Hodges, GE manufactured the engines pursuant to specifications set by the Air Force." *Akin, supra*, at 823.

First, in this case, there is no evidence that the Defendants provided the federal government with any warnings about asbestos; nor is there any evidence that the federal government prohibited Defendants from warning about the dangers of asbestos. Furthermore, there is no evidence that the government independently knew of the danger of exposure to asbestos. Finally, the federal government did not dictate any specifications regarding the *warning* about asbestos-containing products—let alone demand Defendants insulate their facilities with asbestos-containing products.

Although the Defendants have indeed "plead" a federal defense under the federal officer statute, it is not a *"colorable"* federal defense. Defendants have provided this Court with no evidence supporting their *Boyle* defense under the federal officer statute; that is, Defendants have failed to significantly "color" their federal defense with any supporting evidence. This

---

**16.** Defendants suggest that without asbestos, they could not have produced the Avgas, butadiene, and steel under their government contracts. First, this Court has already noted the shaky ground this contention lies upon. *See supra*, fn. 12. Moreover, there simply are no specifications regarding whether Defendants should *warn* about asbestos. Think of it this way: Defendants could have fully complied with their federal contracts and produced Av-

gas, butadiene, and steel *regardless* whether they warned Plaintiffs about the dangers of asbestos. Either way—warning or no warning—Defendants' compliance with the federal contract would have been the same (i.e., Avgas, butadiene, and steel would still have been produced if Defendants had simply slapped a warning sticker on the asbestos-insulated walls).

Court notes, once again, that if there are significant doubts about the propriety of removal, those doubts should be resolved *against* removal. *In re Marriage of Smith, supra; Cameron v. Hodges, supra; State of New Jersey v. Moriarity, supra; Breymann v. Pennsylvania, O. & D.R. Co., supra.* This Court has very significant doubts about the "color" of these defenses [17] and, consequently, the propriety of removal under these circumstances. However, this Court reiterates that the absence of *Mesa*'s second prong destroys the propriety of removal regardless whether Defendants have "colored" their defenses or not.

The Defendants are indeed "persons" under the federal officer statute; thus, Defendants satisfy the first prong of the *Mesa* test. However, Defendants fail to satisfy the second and third prongs of *Mesa.* Although there is indeed some control by the federal government over the removing Defendants' facilities, there is no causal nexus between Defendants' actions under this control and the plaintiffs' claims—a necessary component of the second prong of *Mesa;* thus, Defendants fail to satisfy the second prong of *Mesa.* Finally, there is no evidence that Defendants warned the government about the dangers of asbestos; nor is there any evidence that the federal government independently knew of the dangers of asbestos; nor is there any evidence that the federal government exerted any direction or control with regard to *warning* about asbestos.

Thus, there is no "color" to Defendants' defense under the federal officer statute. Simply put, the government did not make them do it because the government was completely silent as to whether to *warn* about asbestos.[18]

### 4. Defendants' Defective Removal Under Federal Enclave Jurisdiction

Defendants seek removal under federal enclave jurisdiction pursuant to Article 1, Section 8, Clause 17 of the United States Constitution. Article 1, Section 8, Clause 17 of the United States Constitution provides the United States Congress with the following power:

> To exercise exclusive Legislation in all Cases, whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and *to exercise like authority* over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the erection of Forts, Magazines, Arsenals, dock-Yards, and other needful buildings.

U.S. CONST., art. 1, sec. 8, cl. 17 (emphasis added). This is the federal enclave provision that Defendants say confers subject matter jurisdiction upon this Court. It does not.

■ Here, Defendants seek removal pursuant to 28 U.S.C. § 1441(a) [19] on the basis of a substantial federal question un-

17. Somewhere along the line, the removing Defendants decided to inject the Defense Production Act into this case as one their "colorable" defenses. Yet nowhere in their notice of removal did they mention this defense; nor did they supplement their notice of removal with this last-minute defense. Accordingly, this Court refuses to consider this last-minute defense; nonetheless, it reiterates that the complete absence of the second prong of *Mesa* destroys any other defenses (i.e., the "Tort Claims Act") under the federal officer statute the removing Defendants may have (or subsequently discover).

18. Indeed, how could a silent federal officer (obviously a fictitious entity) make anyone do *anything?*

19. Title 28 U.S.C. § 1441(a) reads: "Except as otherwise expressly provided by Act of Congress, any civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

der 28 U.S.C. § 1331.[20] However, 28 U.S.C. § 1446(a), the provision entitled "procedure for removal," requires the unanimous consent of all defendants for proper removal.[21] The Fifth Circuit: "The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires all defendants join in the removal petition." *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Asst. Local 349*, 427 F.2d 325, 326–27 (5th Cir.1970) (citing *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 and *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co.*, 395 F.2d 546 (7th Cir.1968)); *Farias v. Bexar County Board of Trustees for Mental Health and Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir.1991) (en banc), *cert denied*, 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Getty Oil Corp., Div. of Texaco v. Insurance Co. of N. America*, 841 F.2d 1254, 1262 (5th Cir.1988) ("[A]ll defendants who are properly joined and served must join in the removal petition, and ... failure to do so renders the petition defective.") (citations omitted)); *Henry v. Independent American Savings Assoc.*, 857 F.2d 995, 999 (5th Cir.1988) ("Failure of all defendants to join is usually a bar to removal."); *McMahon v. Bunn–O–Matic Corp.*, 150 F.3d 651 (7th Cir.1998). But there's nothing in 1446(a) about a "unanimity requirement" for proper removal. Where did this requirement come from? "Although the removal and remand statutes do not expressly require such action, the Fifth Circuit holds that 28 U.S.C. § 1446(b) requires all defendants who have been properly joined and served at

the time of the removal are required to join in the removal petition, otherwise removal is defective." *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F.Supp. 569 (W.D.Tex.1992); *see Emrich v. Touche Ross & Co.*, supra at 1193 n. 1; *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232–33 (9th Cir.1986); *see also Wilson*, supra, at 97, 42 S.Ct. 35.

In order to avoid the well-settled unanimity requirement for proper removal, Defendants first say "Plaintiffs' argument is irrelevant because 'it is well settled that filing of a petition for removal by a single *federal officer* justifies removal under *section 1442*.'" *Defendants' Joint Opposition* [55] at 25 (emphasis added). Now, did you catch that leap? "Federal officer" under "section 1442?" Well, what does removal under federal officer jurisdiction pursuant to section 1442 have to do with proper removal procedure under federal enclave jurisdiction pursuant to section 1446?[22] Absolutely nothing. Next, Defendants argue that since there are so many of them (approximately 185 in this particular case), imposition of the well-settled unanimity requirement "results in a denial of due process under the Fifth Amendment of the United States Constitution" since it "is virtually impossible to communicate with each of them and timely obtain consents." *Canadianoxy Offshore Production Co.'s Memorandum in Opposition to Remand ("Canadianoxy's Opposition")* [52] at 11. First, this Court specifically notes that of the one hundred and eighty-five (185) defendants, *at least* seventy-seven (77) of

**20.** Title 28 U.S.C. § 1331 reads, in its entirety: "The district courts shall have original jurisdiction of all civil actions arising under the *Constitution,* laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). Here, Defendants seek removal claiming this action arises under Article 1, Section 8, Clause 17 of the United States *Constitution.*

**21.** Title 28 U.S.C. § 1446(a) reads: "A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division

within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

**22.** This Court has already disposed of Defendants federal officer statute as a basis for removal. Apparently, this is its encore.

them are represented by duplicate defense counsel.[23] Second, Defendants were somehow capable of coordinating an extensive, joint briefing scheme despite this "impossibility" of communication.[24] Finally, Defendants' only authority for the proposition that this Court should ignore the Fifth Circuit's well-settled precedent requiring unanimity for removal is simply inapposite.

After citing two Supreme Court cases noting "[a] fundamental requirement of due process is the 'opportunity to be heard,'"[25] Defendants cite *Milstead Supply Co.* for the proposition that this Court can ignore Fifth Circuit precedent and permit their procedurally defective removal since they "should be relieved of the obligation of obtaining consent of all defendants or be given a reasonable period of time in which to obtain consents." *Canadianoxy's Opposition* at 11. *Milstead* does not support this bold proposition. In *Milstead*, plaintiff moved to remand its case since "the later served defendant, Casualty Insurance, did not properly join in the initial removal petition; or, (2) that the original removal petition does not adequately set forth the diversity jurisdiction of this federal district court." *Milstead*, *supra*, at 571. Apparently, the removing defendant, Transportation Insurance, was unaware that the subsequently served de-

fendant, Casualty Insurance, had been properly served and joined to the lawsuit. Thus, Transportation Insurance's removal did not include the joinder or consent of Casualty Insurance. The district court noted "the return of service upon Defendant Casualty Insurance was filed with the state court at 2:05 p.m. on June 15, 1992. Defendant Transportation's original petition for removal and notice of removal were filed with this Court on June 15, 1992, at 5:01 p.m. .." *Id.* at 573. First, June 15, 1992 was the absolute deadline for the first-served defendant, Transportation, to file its notice of removal within the thirty (30) day period under the removal statute. Next, the Court noted that Defendant Transportation was "reasonably diligent in attempting to ascertain whether Defendant Casualty Insurance had been served ..." *Id.* Under these circumstances, the district court found that "exceptional circumstances" justified that "joinder in or consent to the removal petition must be accomplished by only those defendants: (1) who have been served; and (2) whom the removing defendant(s) actually knew or should have known had been served." *Id.*

▮ There are no "exceptional circumstances" in this particular case similar to

---

23. Indeed, one defendant attorney represents twenty-one (21) defendants. He's not the only one who represents multiple defendants.

24. Assume all Defendants are represented by different attorneys (and they're not, *see supra*, fn. 23). Also assume only *one* of the removing Defendants calls the others (also a stretch). A five (5) minute phone call by this attorney to *all* one hundred eight-five (185) Defendants would take nine hundred twenty-five (925) minutes, or about two (2) eight-hour workdays. The now-contacted defendants have twenty-eight (28) days to call the removing Defendants with a "yea" or "nay" on removal. The amount of time afforded Defendants to place these phone calls (thirty (30) days) is greater than the amount of time this Court has had to read all of the briefs in both the '179 and '180 cases, research the issues, hold a hearing, and deliver this opinion (notwithstanding the rest of its docket it had to handle throughout all of this). Suffice

it to say that Defendants' "impossibility" of communication is pure hyperbole.

25. Defendants cite *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) and *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). Neither case dealt with removal. *Armstrong* dealt with the failure of a mother and her successor husband to notify the biological father of proceedings to adopt his daughter; the Court held the mother and her successor husband failed to properly notify the father and thus deprived him due process of law. *Grannis* dealt with a mis-spelled name on the summons—"Geilfuss" incorrectly spelled as "Guilfuss." The Supreme Court held that despite this misnomer, it would presume Mr. Geilfuss received the summons via the mail and that Mr. Geilfuss was sufficiently warned about the pendency of the action. Of removal these cases sayeth not.

those faced by the *Milstead* court. There is no evidence that any removing Defendant was *unaware* of service and joinder upon other Defendants. Moreover, even assuming *arguendo* that this *Milstead* situation was present, there is no evidence that any removing Defendant exercised reasonable diligence to ascertain the service and joinder upon other Defendants. Finally, the facts of this particular case simply do not gray the " 'bright line' rules of law and procedure" like the filing of a notice of removal *less than three (3) hours* after the return of service upon the non-removing defendant is filed with the court—i.e., *Milstead*. There are no "exceptional circumstances" in this particular case permitting Defendants to violate the well-settled law "that under 28 U.S.C. § 1446(a), removal procedure requires all defendants join in the removal petition." *Tri–Cities Newspapers, supra,* at 326-27.

### 5. No Removal Under Federal Title Dispute Statute

Defendants also seek removal under federal title dispute pursuant to 28 U.S.C. § 1442(a)(2). Title 28 U.S.C. § 1442(a)(2) reads:

(a) a civil action ... against any of the following persons may be removed by them to the District Court of the United States ...

(2) A property holder whose title is de-: rived from any such officer, *where such action or prosecution affects the validity of any law of the United States.*

28 U.S.C. § 1442(a)(2) (emphasis added). This is the federal title dispute statute that Defendants say confers subject matter jurisdiction upon this Court. It does not.

The present litigation presents no attack upon the *validity* of any law of the United States. Yes, Defendants allegedly have federal law matters they wish to raise as a defense to Plaintiffs' action, but such defensive matters do not supply removal jurisdiction under 28 U.S.C. § 1442(a)(2). *Town of Stratford v. City of Bridgeport,* 434 F.Supp. 712 (D.Conn.1977) ("While Bridgeport may have federal law matters that it wishes to raise as a defense to Stratford's action, such defensive matters do not supply removal jurisdiction under § 1442(a)(2), just as they would not supply federal question jurisdiction under § 1331."). Indeed, it appears that 28 U.S.C. § 1442(a)(2), the federal title dispute statute, is a rarely invoked statute. Congress passed the statute on March 2, 1833.[26] Initially, Congress limited its application to revenue officers and their successors. Congress later held the statute applied in cases "commenced in state court against any revenue officer of the United States 'or against any person holding property or estate by titled derived from any such officer, concerning such property or estate, and affecting the validity of this (revenue) act or acts of which it is amendatory.' "[27] *Town of Stratford, supra,* at 714 (quoting Ch. 184, Sec. 67, 14. Stat. 171 (July 13, 1866)). Finally, in 1948 Congress amended the statute and "the limitation of what is now § 1442(a)(2) to revenue officers and their successors and to revenue laws was dropped." *Id.* Thus, although Congress "broadened the scope of the provision .by deleting the word 'revenue,' it carried forward the requirement that there be a challenge to the validity of a law of the United States." *Id.*

---

26. For an excellent survey of the genesis and development of the federal title dispute statute, *see Town of Stratford v. City of Bridgeport, supra,* at 712.

27. The federal title dispute statute originally provided for federal removal jurisdiction:

in any case where suit or prosecution shall be commenced in a court of any state against any officer of the United States, or

other person, for or on account of any act done under the revenue laws of the United States, or under colour thereof, or for or on . account of any right, authority, or title, set up or claimed by such officer, or other person, under any such law of the United States.

Ch. 57, Sec. 3, 4 Stat. 633 (March 2, 1833).

In this particular case, Plaintiffs' action does not affect the *validity* of any federal law. "The failure to meet this requirement is fatal to the present case." *Id.* Defendants' removal under the federal title dispute statute pursuant to 28 U.S.C. § 1442(a)(2) is improper because Plaintiffs' action does not affect the *validity* of any federal law.

### 6. Conclusion

This Court, and consequently the MDL court, simply has no subject-matter jurisdiction over this case. First, Defendants invite this Court to extend its own cases— *Winters, Reed,* and *Akin* —into uncharted and unwarranted territory. Specifically, Defendants seek to shroud their entire *facilities* from state-law claims simply because the federal government controlled *products* manufactured there. This Court refuses to generate such unprecedented precedent; and it joins other courts unwilling to blindly permit such blanket immunity. Rather, this Court joins the Honorable G. Thomas Porteous, Jr. for the Eastern District of Louisiana: Although Defendants "arguably 'acted under' the [federal government's] direction when working by detailed instructions ..." to produce Avgas, butadiene, and steel, "... [t]he federal government provided no direction on warnings when using asbestos, and further did not prevent [Defendants] from taking [their] own safety precautions above the minimum standards incorporated in the federal contracts." *Mouton v. Flexitallic,* 1999 WL 225438 (E.D.La. 1999); *see Gauthe v. Asbestos Corp.,* 1997 WL 3255 (E.D.La.1997); *Overly v. Raybestos–Manhattan,* 1996 WL 532150 (N.D.Cal.1996); *Cabalic v. Owens–Corning Fiberglas Corp.,* 1994 WL 564724, No. C–94–2571 EFL (N.D.Cal.1994); *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806 (9th Cir.1992); *McCormick v. C.E. Thurston & Sons,* 977 F.Supp. 400(E.D.Va.1997); *In Re: Mon Mass II v. 20th Century Glove Corp. of Texas,* No. 1:96–cv–91 (W.D.W.Va.1996). Although Defendants are "persons" under the first prong of *Mesa,* they wholly fail to establish the second and third prongs since they show no causal nexus and fail to raise any colorable defense to Plaintiffs' claims. Second, Defendants' non-unanimous removal under federal enclave jurisdiction is procedurally defective. Defendants' complaint about the "impossibility" of communication is really, as this Court revealed, hyperbole. Moreover, Defendants cite no authority for their bold proposition that this Court can simply ignore the Fifth Circuit's well-settled precedent requiring unanimous consent of all defendants for proper removal. Finally, Defendants' last-grab effort for federal jurisdiction under the federal title dispute statute fails since none of the Plaintiffs' claims affects the *validity* of any federal law.

For these reasons, this Court finds it lacks subject matter jurisdiction in the above-entitled cause of action. Accordingly, this Court GRANTS Plaintiffs' *Motion to Remand* [7] and under Title 28 U.S.C. § 1447(c) REMANDS this case to the 172nd Judicial District Court for Jefferson County, Texas from whence it improperly came.

It is SO ORDERED.