Steven TAKACS, Plaintiff,

and

Robert F. Smith, Sr., et al., Intervenors,

v.

AMERICAN EUROCOPTER, L.L.C., et al., Defendants.

No. EP–09–CV–248–DB.

United States District Court, W.D. Texas, El Paso Division.

Sept. 23, 2009.

Ladd Charles Sanger, Slack & Davis, L.L.P., Dallas, TX, Mark David Pierce, Michael L. Slack, Slack & Davis, LLP, Austin, TX, Robert Trenchard, Jr., Trenchard & Hoskins, Kermit, TX, for Plaintiff.

Brian C. Dalrymple, Paul E. Stinson, Stephen C. Johnson, Nixon Peabody, LLP, San Francisco, CA, C. Scott Jones, Michael V. Powell, Locke Lord Bissell & Liddell, LLP, Charles H. Smith, J. Michael Colpoys, Smith & Moore PLLC, Ricardo Ortiz, Bickerstaff Heath Delgado Acosta, LLP, Dallas, TX, Joseph L. Hood, Jr., Windle Hood Alley Norton Brittain & Jay, LLP, Milton C. Colia, Kemp Smith, PC, Alejandro Acosta, Jr., Bickerstaff Heath Delgado Acosta LLP, El Paso, TX, Keith Gerrard, Perkins Coie LLP, Seattle, WA, David Wayne Chant, John G. Sams, Brown Dean Wiseman Proctor Hart & Howell, Fort Worth, TX, Kathrine M. Silver, Audra G. Welter, Jackson Walker, L.L.P., Houston, TX, Andrew L. Fitzgerald, Jack M. Strauch, Jessie C. Fontenot, Jr., Strauch & Fitzgerald, P.C., Winston–Salem, NC, for Defendants.

Victor F. Poulos, Volk Poulos & Coates, LLP, El Paso, TX, Jon C. Kettles, The Kettles Law Firm, Dallas, TX, for Intervenors.

Thomas E. Stanton, Law Offices of Thomas Stanton, El Paso, TX, for Defendants/Intervenors.

### MEMORANDUM OPINION AND ORDER

DAVID BRIONES, Senior District Judge.

On this day, the Court considered Intervenor Bridget Smith's ("Intervenor

Smith") "Motion To Remand," filed in the above-captioned cause on July 22, 2009. On July 31, 2009, Defendant L–3 Communications Vertex Aerospace, LLC ("Vertex") filed a Response, to which Intervenor Smith filed a Reply on August 11, 2009. The Court also considers Plaintiff Steven Takacs' "Motion To Remand," filed on August 6, 2009, to which Vertex responded on August 10, 2009. On August 13, 2009, Intervenor Robert F. Smith, Sr. filed a "Joinder In Plaintiff Steven Takacs' And Intervenor Bridget Smith's Motion [sic] To Remand." Finally, on August 22, 2009, Plaintiff filed a Reply to Vertex's Response. For the reasons stated below, the Court is of the opinion that Plaintiff's and Intervenor Smith's Motions should be granted.

## BACKGROUND

The instant case stems from the crash on May 22, 2007, of a Eurocopter AS350 B3 helicopter, owned by United States Customs and Border Protection ("CBP") and operated by CBP personnel. The crash killed the pilot, Robert Smith, and severely injured Plaintiff. On June 2, 2008, Plaintiff filed a civil action in the 327th District Court of El Paso County, Texas ("state court"). Intervenors Robert F. Smith, Sr., Bridget Smith, and Gabrielle Green joined the state court action and filed their own petitions. Plaintiff and Intervenors amended their petitions, joining various defendants. In his First Amended Original Petition, Plaintiff asserts causes of action for strict liability, breach of warranty, and negligence and seeks damages on those claims. Intervenors assert the same claims and seek the same relief.

On June 2, 2009, Plaintiff served Vertex—the government contractor that maintained the helicopter—with his First Amended Original Petition. On July 2, 2009, Vertex filed its Notice of Removal, pursuant to 28 U.S.C. § 1442(a)(1), asserting that jurisdiction is proper as Vertex is a United States government contractor entitled to removal. *See* 28 U.S.C.A. § 1442(a)(1) (West 2006). On July 22, 2009, Intervenor Smith filed her Motion to Remand, arguing that Vertex cannot carry its burden in establishing the propriety of federal officer removal. On August 6, 2009, Plaintiff filed his Motion to Remand, in which he contends that Defendant's Notice of Removal is improper because Vertex cannot assert a colorable federal defense supporting removal under § 1442(a)(1).

## AUTHORITIES

Title 28, section 1442 of the U.S.C.—the federal officer removal statute—provides that "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove a civil action commenced in state court to the federal district court for the district and division within which the action is pending. 28 U.S.C.A. § 1442(a)(1) (West 2006). "[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir.1998). Further, while federal removal statutes should be strictly construed so as not to deprive a state court of a case properly before it, "when jurisdiction is predicated on § 1442, a more liberal interpretation of the removal statute is to be entertained in order to effectuate the purposes of § 1442...." *Reed v. Fina Oil & Chem. Co.*, 995 F.Supp. 705, 710 n. 5 (E.D.Tex.1998). Nevertheless, "[b]ecause it is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to

644

protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities." *Freiberg v. Swinerton & Walberg Property Srvcs., Inc.*, 245 F.Supp.2d 1144, 1150 (D.Col. 2002).

## DISCUSSION

Through the instant Motions, Intervenor Smith and Plaintiff assert that the instant cause should be remanded as Vertex cannot establish the requisite elements of § 1442.[1] Specifically, Intervenor Smith argues that Vertex cannot show that it was acting under CBP's direction, as it cannot demonstrate that the government direction at issue was specific enough such that Vertex was unable to comply with its state law obligations. Further, Intervenor Smith contends that, as Vertex was not acting under CBP, government-directed actions did not cause the instant crash. Finally, Intervenor Smith argues that Vertex cannot establish a colorable federal defense, as CBP did not issue reasonably precise procedures here. Similarly, Plaintiff argues that Vertex cannot assert a government contractor defense as the reasonably precise maintenance procedures issued by CBP in the instant case are nothing more than standard, "off-the-shelf" requirements.

In its Response, Vertex asserts that it can satisfy all elements of § 1442. First, Vertex argues that it was acting under the direction of CBP, as CBP's work orders were so specific. Further, Vertex argues that Plaintiff inaccurately contends that

Vertex must demonstrate an inability to comply with state law to satisfy this first element. Second, Vertex responds that a nexus exists between Intervenor Smith's and Plaintiff's claims and Vertex's maintenance of the helicopter. Third, Vertex argues that it has a colorable government contractor defense. Pursuant to this defense, Vertex argues that CBP approved reasonably precise maintenance procedures that it followed in maintaining the subject helicopter. The Court finds Vertex's arguments unconvincing and is of the opinion that the instant cause of action should be remanded.

■ "Removal pursuant to § 1442(a)(1) is ... meant to 'ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties.'" *Winters*, 149 F.3d at 398 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981)). Defendants invoking this statute must show:

(a) that they were acting at the direction of an officer of the United States; (b) that they are 'persons' as envisioned by the statute; (c) a causal nexus between plaintiffs' claims and acts that the defendants performed under color of federal office; and (d) that they have a colorable federal defense to the plaintiffs' claims.

*Reed*, 995 F.Supp. at 710.

## I. Persons Acting under Color of the United States

■ Following the first and second element, the United States Supreme Court

**1.** Invocation of the federal officer removal statute constitutes the only asserted ground for removal in the instant case. Intervenors and Plaintiff solely pled state-law causes of action, thereby negating federal question jurisdiction. *See* 28 U.S.C.A. § 1331 (West 2006) (establishing original jurisdiction over

civil actions arising under federal law). Further, several of the Defendants are citizens of Texas, destroying diversity jurisdiction in the instant matter. *See* 28 U.S.C.A. 1332(a)(1) (West 2006) (establishing original jurisdiction over cases involving citizens of different states). The Parties do not assert otherwise.

("Supreme Court") found that "precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 152, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007) (emphasis in original). Further, this assistance should "help[ ] officers fulfill other basic governmental tasks." *Id.* at 153, 127 S.Ct. 2301. As such, a government contractor "acts under" a government entity when the government entity would otherwise have to perform the services itself. *See id.* at 154, 127 S.Ct. 2301. Finally, corporations are "persons" for purposes of § 1442(a)(1). *Winters,* 149 F.3d at 398.

Here, there can be little doubt that Vertex, a corporation, constitutes a person for purposes of § 1442. *See id.* Per the contract between Vertex and CBP, CBP maintains a quick-reaction force designed to detect, interdict, track, and apprehend aircraft, marine, and land vehicles attempting to smuggle contraband into the United States. Further, the aviation program provides air support to other government and law enforcement entities. Vertex is responsible for performing program management, aircraft maintenance, logistics, supply, and electronic data processing support to ensure that CBP's aircraft are operational and ready where and when required by CBP. As such, Vertex's performance under the contract assists CBP in the fulfillment of its duties and provides maintenance services that CBP would be required to otherwise provide for itself. *See Watson,* 551 U.S. at 154, 127 S.Ct. 2301. Accordingly, Vertex acted under the direction of CBP in maintaining the helicopter at issue pursuant to the contract.

*II. Causal Connection*

■ As to the third element—the existence of a causal nexus, the Supreme Court held in *Willingham v. Morgan* that § 1442 "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." 395 U.S. 402, 406–07, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). As such, in *Willingham,* the Supreme Court found that a warden and a chief medical officer's alleged violations of the plaintiff's rights were sufficiently causally connected to their duty to enforce federal law by their presence at the prison when and where the alleged violations occurred. *See id.* at 409, 89 S.Ct. 1813. Indeed, the United States Court of Appeals for the Second Circuit ("Second Circuit") has held that this element establishes a fairly low threshold for defendants to overcome and that "translated to non-governmental corporate defendants, such entities must demonstrate that the acts for which they are being sued ... occurred *because of* what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 137 (2d. Cir.2008).

Here, Plaintiff and Intervenor Smith allege that Vertex negligently maintained the helicopter. Vertex's contract with CBP directed that Vertex be responsible for maintenance of all CBP aircraft. As such, Vertex has established that the subject of Plaintiff and Intervenor Smith's claims arises from the acts for which Vertex and CBP entered into a government contract. Thus, the Court finds that Vertex has established a causal connection between the instant claims and the acts that Vertex performed under color of federal office. *See Reed,* 995 F.Supp. at 710.

*III. Government Contractor Defense*

■ Finally, a defendant invoking the federal officer removal statute must assert a colorable federal defense. Borrowing from the Supreme Court's articulation of

the government contractor defense in design defect cases, *see Boyle v. United Techn. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") rearticulated the elements of the government contractor defense in a maintenance case. *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1335 (11th Cir.2003).[2] First, the United States must approve reasonably precise maintenance procedures. *Id.* Second, the defendant's maintenance must have conformed with those procedures, and third, the defendant must warn the United States of the danger in relying on those procedures of which the defendant has actual knowledge and the United States does not. *Id.*

■ The concept of a conflict between federal maintenance procedures and the application of state tort law to claims arising under the federal maintenance procedures is implicit in the application of the *Hudgens* elements. While Plaintiff argues that this implicit conflict is absent in the instant case, Vertex argues that this conflict is not a prerequisite to the government contractor defense and that courts have rejected such arguments for the last twenty-one years. Plaintiff and Vertex are both correct. The inferred concept of a conflict between state tort law and federally-approved reasonably precise specifications emanates from the Supreme Court's *Boyle* opinion.[3] Indeed, the Eleventh Circuit stressed that in order for the *Boyle* elements to apply, a 'significant conflict' between federal policy and state law must exist. *Id.* at 1334–35. Further, the United States District Court for the Northern District of California held in *Barron v. Martin–Marietta Corporation*, that "whether viewed as an independent requirement or part-and-parcel of Boyle's three-part inquiry, for the government contractor defense to apply, there must be a significant conflict between duties under state tort law and duties imposed by federal contract." 868 F.Supp. 1203, 1206 (N.D.Cal.1994). Similarly, the Second Circuit found that the government contractor defense will only apply if the defendant establishes both "a conflict between the requirements of state tort law and those of the Government contract" and an exercise of Government discretion in considering reasonably precise procedures. *See Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 86 (2d Cir.1993). The Second Circuit emphasized, however, that such inquiries are subsumed within the three elements of the government contractor defense and not prerequisite to the defense's application. *Id.*[4] Thus, the Court agrees that the state-federal conflict is not a prerequisite to application of the government contractor defense, as Vertex concludes. Neverthe-

**2.** In the absence of a Fifth Circuit case on point, the Court finds the Eleventh Circuit's *Hudgens* opinion very persuasive.

**3.** "If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 509, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

**4.** Again, the Fifth Circuit has not weighed in on the proper consideration of this state-federal conflict. Nevertheless, Fifth Circuit case law addressing the federal contractor defense certainly suggests that this conflict must be considered. *See Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir.1989).

less, the Court finds that this conflict is subsumed in the elements and that it is lacking in the instant case, as Plaintiff contends. The Court addresses these elements below.

### A. Reasonably Precise Maintenance Procedures

 First, defendants asserting a federal contractor defense in a maintenance case must establish that the Government prescribed reasonably precise maintenance procedures. *Hudgens*, 328 F.3d at 1335. The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") has held that what is ultimately determinative of the applicability of the government contractor defense in a given case is whether the choice at issue was made by the contractor or the government, for only in the latter case is the government's discretion implicated. *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir.1989) (applying *Boyle* to a design case). To determine whether the maintenance procedures were prescribed by the Government, the Government must have prepared the specifications or substantively reviewed them. *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir.2000). Substantive review constitutes "a 'continuous back and forth' between the contractor and the government." *Id.* Accordingly, a defendant cannot invoke the federal contractor defense when the Government has provided a mere rubber stamp to the defendant's actions. *Trevino*, 865 F.2d at 1480. Rather, "the purpose of the defense is to protect the discretionary functions of the government," recognizing that "not all government acts involving some element of choice are discretionary functions...." *Id.* For example, such discretionary functions are not implicated where the Government specifies the concepts a defendant must utilize but "requir[es] only that the final [outcome] satisfy minimal or general stan-

dards established by the government." *Id.* In short, "[i]f the government approved imprecise or general guidelines, then discretion over important ... choices would be left to the government contractor." *Id.* at 1481.

Further, the requisite state-federal conflict surfaces in this element, for "[i]f the Government did not approve reasonably precise [maintenance procedures] ..., there is no conflict with state law." *Lewis*, 985 F.2d at 86. Contrarily, if the Government did approve reasonably precise maintenance procedures, "*conflicting* state tort law is preempted." *Id.* at 87 (emphasis added). Indeed, in *Hudgens*, the Eleventh Circuit stressed that "the requirement that prescribed maintenance procedures be reasonably precise is necessary to ensure that a close relationship exists between the contract duty imposed by the federal government and the state law duty that application of the government contractor defense will preempt." 328 F.3d at 1335. In that case, the United States Army ("Army") issued comprehensive publications that dictated reasonably precise inspection procedures that deviated from Federal Aviation Administration ("FAA") and manufacturer advisories. *Id.* at 1336. In fact, the Army publications, reflecting a "high degree of precision," "affirmatively and deliberately omitted [FAA and manufacturer precautions] from the prescribed maintenance procedures." *Id.* at 1335. Under such circumstances, the Eleventh Circuit easily found that the first element of the government contractor defense had been met.

Here, the contract entered into between CBP and Vertex indicates that Vertex was entirely responsible for developing, implementing, and maintaining a quality management program to meet CBP needs. Per the contract, Vertex's aircraft mechanics were required to obtain FAA licensing, and Vertex—not CBP—had to provide the

necessary forms for documenting and recording flight time, discrepancies, maintenance actions, material and parts requirements, work orders, and any other forms and documents required for maintenance. Vertex was then responsible for including a flight release statement, and only after Vertex had created and submitted all the above documentation did such documentation become the property of CBP. Furthermore, Vertex was responsible for accepting, maintaining, and tracking all maintenance transaction records of work performed.

In its Notice of Removal and Response, Vertex stresses that it was required to follow "precise and detailed" specifications in maintaining aircraft. Contrary to Vertex's assertions, the contract entered into between Vertex and CBP indicates that Department of Defense ("DOD")-type aircraft should follow DOD regulations (government-created regulations). FAA-type aircraft, however, should be maintained in accordance with the manufacturer's recommendations and FAA mandatory directives and regulations (the same regulations any mechanic would use in maintaining aircraft). The instant helicopter was an FAA-type aircraft, not a DOD-type aircraft. Indeed, the National Transportation Safety Board's factual report of the subject crash indicates that, "according to records, the aircraft was maintained in accordance with the *manufacturers* [sic] recommended procedures." Moreover, the work records submitted by Vertex with its Response—work records that, according to the contract, were created by Vertex—demonstrate that these "precise and detailed" specifications are nothing more than excerpts from the printed version of the "Eurocopter DVD 'Open 350' "—the manufacturer's DVD.

Finally, the Declaration of James Driscoll ("Driscoll"), Vertex's Branch Manager of the El Paso branch, states that Vertex could not begin work until the Director of Maintenance authorized the commencement of such work per a work order. Further, Driscoll asserts that Vertex was required to do its work in accordance with "OEM approved manuals, maintenance work cards, regulations, and bulletins." As to the latter contention, OEM stands for nothing more than "Original Equipment Manufacturer," and as addressed by the Court above, such requirements are nothing more than industry and FAA standards. That the Government adopted these regulations is of no moment. *See Trevino,* 865 F.2d at 1480. As to the former contention, the contract states that the "performance of work under this contract shall be subject to the technical direction of the Contracting Officer's Technical Representative (COTR) and/or a Contracting Officer's designated representative." Nevertheless, the contract stresses that such oversight must be within the scope of the contract specifications, and that the COTR *does not have* the authority to "direct[ ], supervise[ ] or otherwise control[ ] the actions of the Contractor's employees." Indeed, the government oversight described in the contract implicates oversight of a financial or budgetary nature, but the contract expressly designates Vertex as the contracting party responsible for large-scale development, implementation, and maintenance of the contract requirements, as discussed above.

In short, Vertex has failed to submit anything reflecting CBP's prescription of the instant maintenance procedures. As the subject helicopter was an FAA-type aircraft that was maintained according to FAA and manufacturer specifications, CBP did not rely on DOD specifications in maintaining the helicopter and, therefore, did not prepare the specifications that Vertex followed. *See Kerstetter,* 210 F.3d at

435. Moreover, nothing suggests that CBP and Vertex were involved in a continuous back and forth such that CBP could be charged with substantively reviewing the maintenance procedures at issue. *See id.* Rather, Vertex followed standard protocol, negating the existence of the requisite state-federal conflict. *See Lewis*, 985 F.2d at 86. As such, Vertex could comply with state tort law while simultaneously fulfilling the contract duty imposed by CBP. *See Hudgens*, 328 F.3d at 1335. Thus, Vertex has not shown that it can raise a colorable federal defense. Therefore, the Court finds that the instant case should be remanded to the state court from whence it came.

### B. Conformance and Warning

Having found that CBP did not prescribe reasonably precise maintenance procedures here, the Court will, nevertheless, finish its analysis of the government contractor defense. To successfully raise a colorable federal defense, a defendant must also show that the defendant's maintenance conformed with reasonably precise and government-imposed maintenance procedures and that the defendant warned the United States of the dangers in relying on those procedures of which the defendant had actual knowledge but the United States did not. *See id.* As to the second element—conformance to reasonably precise maintenance procedures, the Fifth Circuit has stated in the context of a design case that "[n]onconformance with a specification means more than that the ultimate design feature does not achieve its intended goal. The alleged defect must exist independently of the design itself, and must result from a deviation from the required military specifications." *Kerstetter*, 210 F.3d at 435. In the instant case, the Court cannot, at this juncture, determine whether Vertex deviated from the FAA and manufacturer procedures that

CBP requested it follow. As Vertex's burden in defending its removal is solely to raise a *colorable* defense, the Court notes that it may have conformed to said procedures, but that such conformance does not negate the fact that Vertex was solely responsible for maintenance oversight, employing standard procedures. In short, having found that these procedures were not government-prescribed procedures, the Court's inability to ascertain the application of this second element does not affect the ultimate outcome of the instant Motions.

■■■ Finally, as to the third element—warning the Government of dangers known to the defendant but not the Government, " 'a government contractor is only responsible for warning the government of dangers about which it has actual knowledge.' " *Kerstetter*, 210 F.3d at 436 (quoting *Trevino*, 865 F.2d at 1487). "This element clearly contemplates that the government's approval of [maintenance procedures] will involve informed decisions and considered choices." *Trevino*, 865 F.2d at 1481. This warning requirement prevents a defendant's incentive to withhold information. *Id.* at 1481–82. Here, as addressed above, CBP's oversight of the maintenance procedures at issue appear budgetary in nature while Vertex was responsible for the application and oversight of them. The lack of "informed decisions and considered choices" on the part of CBP militates against finding that Vertex carried its burden under this element. Indeed, Vertex could not have known of dangers in following government-prescribed maintenance procedures in the instant case, as the maintenance procedures Vertex followed were standard industry procedures—those developed by the FAA and the manufacturer—and not at all government-prescribed. Thus, the Court finds that Vertex failed to raise a colorable fed-

eral defense and that, therefore, Vertex may not invoke the federal officer removal statute. Accordingly, the Court finds that the instant cause should be remanded to state court.

## CONCLUSION

In light of the foregoing, the Court determines that Vertex has not satisfied its burden of proving that federal jurisdiction exists. While Vertex—a person for purposes of § 1442—was acting at the direction of CBP and a causal nexus exists between Plaintiff and Intervenor Smith's claims and Vertex's maintenance of the helicopter under color of federal office, Vertex has not asserted a colorable federal defense. CBP did not issue reasonably specific maintenance requirements over which CBP and Vertex engaged in a continuous back and forth. Rather, CBP specified, per the contract, that Vertex follow industry standards and left the implementation of that contract to Vertex. Further, while the Court cannot, at this time, ascertain whether Vertex conformed to those requirements, Vertex could not have warned CBP of following the FAA and manufacturer procedures, as they were not government-prescribed procedures. Thus, the Court is of the opinion that Plaintiff and Intervenor Smith's Motions for Remand should be granted.

Accordingly, **IT IS HEREBY ORDERED** that Intervenor Bridge Smith's "Motion To Remand" is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Steven Takacs' "Motion To Remand" is **GRANTED**.

**IT IS FURTHER ORDERED** that Intervenor Robert F. Smith, Sr.'s "Joinder in Plaintiff Steven Takacs' And Intervenor Smith's Motion [sic] To Remand" is **GRANTED**.

**IT IS FINALLY ORDERED** that the above-captioned cause is **REMANDED** to the 327th District Court of El Paso County, Texas.